# 25-3047

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARISOL ARROYO-CASTRO,

*Plaintiff–Appellant,*

*v.*

ANTHONY GASPER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
MARYELLEN MANNING, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,
DARIO SOTO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
ANDREW MAZZEI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

*Defendants–Appellees.*

_____

On Appeal from the U.S. District Court for the District of Connecticut,
Case No. 3:25-cv-00153-SFR

_____

## BRIEF OF AMERICAN HINDU JEWISH CONGRESS INC.,
## AND RELIGIOUS FREEDOM INSTITUTE
## AS AMICI CURIAE IN SUPPORT OF
## PLAINTIFF-APPELLANT AND URGING REVERSAL

_____

Denise M. Harle
**FLORIDA STATE UNIVERSITY
COLLEGE OF LAW
FIRST AMENDMENT CLINIC**
425 W. Jefferson St.
Tallahassee, Florida 32306
(850) 644-3255
dharle@law.fsu.edu

Abigail Morgan*
Nicholas Fernandez*
*Law Students at Florida State
University College of Law

*Counsel for American Hindu
Jewish Congress Inc. and
Religious Freedom Institute*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, neither American Hindu Jewish Congress Inc. nor Religious Freedom Institute has a parent company or is a publicly traded company, and no publicly held corporation owns 10% or more of the stock of either organization.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................iiv

INTEREST OF AMICI CURIAE ........................................................ 1

SUMMARY OF ARGUMENT ............................................................ 3

ARGUMENT ..................................................................................... 7

I. The Crucifix is Private Religious Exercise, Not Government Speech. ...................................................................................................... 7

II. The School's Selective Prohibition on Religious Expression Constitutes Unconstitutional Viewpoint Discrimination. ................... 12

III. The School's Policy Triggers Strict Scrutiny Because It Is Neither Neutral Nor Generally Applicable....................................................... 15

IV. Permitting Ms. Castro's Crucifix Does Not Violate the Establishment Clause Under the Supreme Court's Governing Historical Framework............................................................................ 19

V. The Free Exercise Clause Protects Teachers Maintaining  Discreet Religious Symbols That Generate Nothing More Than an Inactionable "Mere Shadow" of Concern Under the Establishment Clause. ........... 22

   A.   Public-school officials cannot invoke the Establishment Clause to act without neutrality toward religion. ......................................... 22

   B.   If the decision below stands, it will burden the sincere religious beliefs of innumerable public-school teachers of minority faiths...... 24

   C.   The government may not bar teachers from having religious symbols on the job when those items are meant for discreet personal use…………................................................................................... 27

     i.  A public-school teacher keeping a Bible on or near their desk for personal use is constitutionally protected activity. ........................ 27

     ii.   School districts cannot create rules specifically prohibiting religious items............................................................................... 29

D.  Neither outmoded precedents nor the district court's mistaken overextension of *Garcetti* support the conclusion that Ms. Castro had no free exercise rights to hang the crucifix at her desk. ...................31

   i.  Previous rulings permitting the singling out of religious practices do not control here..........................................................31

   ii.  The district court erred by excessively relying on *Garcetti*.....34

CONCLUSION ...................................................................................35

CERTIFICATE OF COMPLIANCE.....................................................36

CERTIFICATE OF SERVICE ............................................................37

iii

# TABLE OF AUTHOTITIES

**Page(s)**

**Cases**

*Board of Education of Westside Community Schools v. Mergens*,
    496 U.S. 226 (1990)..............................................................................19

*Capitol Square Review & Advisory Board v. Pinette*,
    515 U.S. 753 (1995).............................................................................12

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)................................................. 4, 15, 16, 17, 18, 19

*Cooper v. Eugene School District No. 4J*,
    723 P.2d 298 (Or. 1986) ................................................................31, 32

*Daniels v. City of Arlington*,
    246 F.3d 500 (5th Cir. 2001)...........................................................17

*Employment Division, Department of Human Resources of Oregon v. Smith*,
    494 U.S. 872 (1990)........................................................ 7, 11, 16, 22

*Engquist v. Oregon Department of Agriculture*,
    553 U.S. 591 (2008)...........................................................................16

*Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*,
    170 F.3d 359 (3d Cir. 1999) .............................................................15

*Freshwater v. Mount Vernon City School District Board of Education*,
    1 N.E.3d 335 (Ohio 2013)............................................................27, 28

*Friedman v. Board of County Commisioners of Bernalillo County*,
    781 F.2d 777 (10th Cir. 1985).........................................................23

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021).....................................................................15, 18

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)........................................................................9, 34

iv

*Hysong v. School District of Gallitzin Borough,*
  30 A. 482 (Pa. 1894) ...............................................................................25

*Johnson v. Poway Unified School District,*
  658 F.3d 954 (9th Cir. 2011)..................................................................33

*Kellas v. Department of Corrections,*
  145 P.3d 139 (Or. 2006) ........................................................................32

*Kennedy v. Bremerton School District,*
  597 U.S. 507 (2022)............3, 5, 6, 7, 9, 10, 16, 17, 20, 21, 22, 23, 30, 33

*Kiesinger v. Mexico Academy and Central School,*
  427 F. Supp. 2d 182 (N.D.N.Y. 2006) ..................................................14

*Lamb's Chapel v. Center Moriches Union Free School District,*
  508 U.S. 384 (1993)................................................................................23

*Marchi v. Board of Cooperative Eductional Services of Albany,*
  173 F.3d 469 (2d Cir. 1999) ..................................................................11

*Morgan v. Swanson,*
  659 F.3d 359 (5th Cir. 2011)..................................................................15

*Nichol v. ARIN Intermediate Unit 28,*
  268 F. Supp. 2d 536 (W.D. Pa. 2003)........................................ 15, 29, 34

*Nichols v. Caroline County Board of Education,*
  No. Civ. JFM–02–3523, 2004 WL 350337 (D. Md. Feb. 23, 2004).......28

*Pickering v. Board of Education,*
  391 U.S. 563 (1968)..................................................................... 9, 23, 34

*Rosenberger v. Rector & Visitors of University of Virginia,*
  515 U.S. 819 (1995)..................................................................... 12, 30

*Santa Fe Independent School District v. Doe,*
  530 U.S. 290 (2000).................................................................................23

*Seidman v. Paradise Valley Unified School District No. 69,*
  327 F. Supp. 2d 1098 (D. Ariz. 2004).....................................................13

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ......................................................... 12, 14, 15, 20

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
  309 F.3d 144 (3d Cir. 2002) ................................................. 33

*Tinker v. Des Moines Independent Community School District*,
  393 U.S. 503 (1969) .......................................................... 3, 23

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  582 U.S. 449 (2017) ........................................................... 11, 16

*United States v. Board of Education for School District of Philadelphia*,
  911 F.2d 882 (3d Cir. 1990) ............................................... 32, 33

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ........................................................... 19, 20

*Warnock v. Archer*,
  380 F.3d 1076 (8th Cir. 2004) ........................................... 28, 29

*Widmar v. Vincent*,
  454 U.S. 263 (1981) ........................................................... 22

*Williams v. Vidmar*,
  367 F. Supp. 2d 1265 (N.D. Cal. 2005) ............................... 10

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) ........................................................... 12

## Statutes

24 Pa. Stat. and Cons. Stat. § 11–1112 (West 2024) ............................ 32

## Other Authorities

Bryant Jensen & Irvin L. Scott, *Faith in Education Renewal: Religion as a Resource to Transform Learning Opportunities*, Wheatley Institute 31 (2026), https://wheatley.byu.edu/0000019c-fd37-d3b9-a1dc-ffffc6470000/ faith-in-educational-renewal-religion-as-a-resource-to-

transform-learning-opportunities .................................................. 8, 24

Erin Hawley, *A Mandate to Discriminate?: Why the Establishment Clause Does Not Justify the Exclusion of Religious Charter Schools*, 9 Harv. J.L. & Pub. Pol'y: Per Curiam 1 (2025) ................................... 21

*Mishnah Berurah* .................................................................................. 25

Stephanie H. Barclay, *The Religion Clauses After Kennedy v. Bremerton School District*, 108 Iowa L. Rev. 2097 (2023) .................................... 21

*Surah Al-Ahzab* .................................................................................... 25

*Surah An-Nur* ....................................................................................... 25

*Vaaran Bhai Gurdas* ............................................................................ 24

## INTEREST OF AMICI CURIAE[1]

**The American Hindu Jewish Congress, Inc. (AHJC)** is a Washington, D.C.-based non-profit advocacy organization dedicated to combating antisemitism and Hindu hate in the United States. AHJC represents Hindus, Buddhists, Jains, Sikhs, and members of other religious minority groups that often face workplace discrimination, including in public employment. AHJC members include an interfaith network of community leaders, student fellows, civil-rights advocates, and cultural associations nationwide.

AHJC regularly participates as amicus curiae in federal cases involving religious liberty in the workplace, including in several Circuit Courts and the U.S. Supreme Court. AHJC's contributions in cases involving free exercise and free speech claims aim to provide helpful context for the unique prejudice experienced by members of minority faiths and the subtle, insidious ways in which popular policies may burden religious exercise for underrepresented groups.

---

[1] Neither party's counsel in this case authored this brief in whole or in part. Neither party's counsel contributed any money or other funding for the preparation or submission of this brief. No other person, other than amici, their members, or their counsel, contributed money or assistance intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

**The Religious Freedom Institute (RFI)** is a Washington, D.C.-based non-profit dedicated to ensuring religious freedom for everyone, everywhere. RFI's mission advocates for a world that protects religious freedom as a fundamental human right, ensuring both the advancement of religious freedom and the reduction of religious persecution.

RFI's Islam and Religious Freedom Action Team (IRF) advances this mission in three core ways: ensuring that Muslim voices have a platform in religious freedom conversations, uncovering the foundations of religious freedom within Islamic teachings, and protecting the religious freedom rights of Muslims. IRF conducts research, education, and advocacy centered on freedom from religious coercion and equal rights for people of all faiths. It publishes and amplifies Muslim-authored scholarship, integrates Muslim perspectives into broader religious freedom efforts, and collaborates with other RFI action teams in advocacy.

AHJC and RFI jointly file this amici brief to ensure that public employers do not burden the religious liberty of minority faith communities. The district court's reasoning, if left uncorrected, would effectively strip public-school employees of their religious identity simply by virtue of their employment—a result that harms people of all faiths. Amici

2

therefore have a shared and substantial interest in ensuring that this Court reaffirms that public employees retain the right to express and practice their faith free from discrimination or discipline.

## SUMMARY OF ARGUMENT

Teachers do not "'shed their constitutional rights . . . at the schoolhouse gate.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). Those rights maintained in the classroom include First Amendment religious liberty. Although the Establishment Clause prevents public-school teachers from promoting religion in their official duties, teachers may freely exercise their private religious practices so long as those practices comply with neutral, generally applicable rules.

Evenhandedness is key. A threshold question this Court must resolve is whether Appellant Marisol Arroyo-Castro's small crucifix by her desk constitutes government speech. It does not. The Supreme Court rejected the proposition that a public employee's personal religious conduct automatically becomes government speech simply because it occurs in a government workplace. *Kennedy*, 597 U.S. at 539–40. The relevant inquiry is not *where* the expression occurs, but *whose* expression it is. *Id.*

3

at 529. Here, the crucifix was a small, personal item belonging to Ms. Castro, not featured in instruction or incorporated into curriculum. This passive, personal display reflects the private faith of a private individual who happens to work for the government—not speech by the government itself.

In addition, the School District's policy discriminates against religion. A facially neutral policy is not neutral as applied if it burdens religious practice while permitting comparable secular conduct. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542–43 (1993). Such selective enforcement strips the policy of its neutrality and triggers strict scrutiny—a standard the School District cannot satisfy here.

While the school ordered the removal of Ms. Castro's crucifix, other teachers' secular personal items, like a Baby Yoda figurine and athletic memorabilia, were left alone. This differential treatment is textbook viewpoint discrimination: only *religious* items are restricted. Schools may not enforce policies specifically targeting religious practices, while allowing comparable secular conduct. Doing so violates teachers' free exercise rights. This selective enforcement triggers strict scrutiny and lacks any compelling justification. And the school cannot cure this violation by

4

invoking the Establishment Clause, because *Kennedy* abandoned the *Lemon* reasonable-observer test in favor of an analysis grounded in historical practices. *Kennedy*, 597 U.S. at 534–36. The Supreme Court resolved the tension between the Free Exercise Clause and the Establishment Clause by holding that private religious expression neither establishes religion nor constitutes government endorsement. *Id.* at 534–37, 542–44.

These constitutional principles exist not to protect any single faith tradition, but to protect them all. Amici write separately to emphasize that the constitutional principles implicated extend far beyond this case. The district court's order permitting selective enforcement against personal visible religious exercise by teachers will disproportionately burden minority and underrepresented faith traditions.

Schools could bar the Sikh teacher's turban, the Muslim teacher's hijab, the Jewish teacher's yarmulke, and the Hindu teacher's tilak— items that are not merely symbolic, but obligatory expressions of religious belief. The same logic would authorize banning personal religious items kept for private use, like prayer beads, rosaries, and even personal copies of the Quran or Torah kept at a teacher's desk. Precedent from

courts across the country forecloses that result and collectively establishes that public employees retain a constitutional right to maintain personal religious items in their workspace. Ms. Castro's crucifix is no different.

The district court's reliance on two cases from other jurisdictions does not save its flawed analysis. One case involved garb prohibitions borne of anti-Catholic animus, which have since been repealed by legislatures nationwide and were effectively abrogated by *Kennedy*. *See* 597 U.S. at 540. The second involved a teacher plastering large religious banners across classroom walls in an obvious effort to press his views on students—nothing like a small crucifix placed beside a teacher's desk and largely outside student sightlines. Neither case controls here.

First Amendment caselaw makes this clear: selectively enforcing the School District's policy against Ms. Castro's crucifix, without any showing that comparable secular expression was treated alike, cannot survive strict scrutiny under the Free Exercise Clause. Allowing rules that burden religious practice adds another tool in the arsenal of government officials prejudiced against minority faiths. Amici respectfully urge this Court to hold that the First Amendment prohibits precisely this kind

6

of selective, religion-targeting enforcement.

## ARGUMENT

**I. The Crucifix is Private Religious Exercise, Not Government Speech.**

Ms. Castro's display of a small personal crucifix beside her desk is quintessential private religious exercise. The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy*, 597 U.S. at 524 (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990)).

*Kennedy* confirms that this kind of personal, non-instructional religious exercise is constitutionally protected. Central to *Kennedy*'s reasoning is a distinction between expression directed at the public in the employee's official capacity and expression that reflects personal religious conduct—this distinction helps separate government speech from private religious exercise. 597 U.S. at 527–31. The relevant inquiry is not simply *where*, but *who*. *Id*. at 529. Coach Kennedy's post-game prayers—conducted at midfield, sometimes with students present, in view of the

public—still qualified as private religious exercise because they were personal, voluntary, and not delivered as part of his official duties. *Id.* at 529–31. And if midfield prayers following a public-school football game do not constitute government speech, a small personal crucifix kept by an employee's desk presents an even clearer case.

Ms. Castro does not use the crucifix as part of any lesson, school program, or official communication. JA59(¶21); JA83. She does not direct students' attention to it, incorporate it into instruction, or invoke her authority as a teacher to promote its religious significance. *Id.* The crucifix functions as a private devotional object—a personal anchor to faith during the workday—not a vehicle for conveying any school-endorsed religious message. As Ms. Castro established, the crucifix reminds her of her grandmother and reminds her to pray during lunch breaks and when teaching becomes stressful. JA58-59(¶19, 20, 21); SPA6. Teachers nationwide report doing the same, drawing privately on their faith to cope with job-related stress and sustain enthusiasm for their work. Bryant Jensen & Irvin L. Scott, *Faith in Education Renewal: Religion as a Resource to Transform Learning Opportunities*, Wheatley Institute 31 (2026), https://wheatley.byu.edu/0000019c-fd37-d3b9-a1dc-ffffc6470000/faith-

in-educational-renewal-religion-as-a-resource-to-transform-learning-opportunities.

The school argues that because Ms. Castro displays the crucifix while acting in her capacity as a public-school employee, her religious exercise is attributable to the government and therefore subject to government control. *Kennedy* forecloses this argument. The Supreme Court squarely rejected the notion that a public employee's religious expression is automatically converted into government speech simply because it occurs in the workplace or during work hours. *Kennedy*, 597 U.S. at 529–31. Warning against adopting an "excessively broad job description" that would treat everything a public-school employee does on school grounds as government speech, *id.* at 530, the Court explained that such a rule would vest in school administrators nearly unlimited power to suppress the private religious lives of their employees—a result the Free Exercise Clause cannot tolerate. *Id.* at 530.[2]

---

[2] Even if the *Pickering-Garcetti* framework applied, it would not change the result. Under that line of cases, a public employee's speech is protected from employer retaliation unless the employee spoke pursuant to her official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968). Keeping a personal religious symbol as an expression of private faith plainly falls outside any official duty.

Ms. Castro's display of the crucifix beside her desk is different from a scenario in which she engaged in classroom discussion about the crucifix's religious significance or broader Christian teachings. And it's a long way from encouraging students to worship the crucifix. The latter would be proselytizing, which is prohibited in public-school classrooms. *See generally Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 472–73, 476–77, 480 (2d Cir. 1999) (upholding a directive requiring a special education teacher to cease incorporating religious themes into classroom instruction); *Williams v. Vidmar*, 367 F. Supp. 2d 1265, 1272–73, 1275–76 (N.D. Cal. 2005) (holding that school officials did not violate an elementary school teacher's free-speech rights by restricting classroom materials with religious content, and drawing an explicit distinction between a teacher who holds religious beliefs and one who expresses those beliefs through classroom instruction).

The school's position, taken to its logical end, would authorize precisely the outcomes *Kennedy* condemned: firing a Muslim teacher for wearing a hijab, or disciplining a Christian aide from praying quietly over her lunch. 597 U.S. at 530–31. The Free Exercise Clause does not permit the government to condition public employment on the abandonment of

10

visible religious identity or private devotional practice. *Id.* at 541, 543–44.

This distinction between government speech and private religious exercise is pressing for adherents of minority faiths, whose practices may be unfamiliar to courts and policymakers. For many faith traditions, visible religious expression is not merely symbolic, but is constitutive of belief itself. A Muslim's hijab or tasbih, a Sikh's turban, a Hindu's mala, a Jewish employee's yarmulke: none of these are mere messages directed at an audience. They are acts of devotion, obligations of conscience, and the lived expression of a relationship with God. To analyze such practices solely through a communicative lens, asking what message they convey rather than what role they play in the believer's religious life, is to misunderstand their nature entirely. The Free Exercise Clause was designed to protect not just what believers think, but how they live out their faith. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 469 (2017) (Gorsuch, J., concurring) (citing *Smith*, 494 U.S. at 877) ("[The Religion] Clause guarantees the free *exercise* of religion, not just the right to inward belief (or status).").

11

## II. The School's Selective Prohibition on Religious Expression Constitutes Unconstitutional Viewpoint Discrimination.

Because the crucifix is private speech, the school's decision to prohibit it while permitting comparable personal expression constitutes viewpoint discrimination. A bedrock principle of the First Amendment is that personal conscience and religious expression receive greater protection, not less, than secular expression. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972). Where private speech is allowed, the government cannot discriminate against religious expression. *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("[P]rivate religious speech . . . is as fully protected under the Free Speech Clause as secular private expression."); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). This principle applies with equal force regardless of the precise label attached to the space in which expression occurs—so long as the government has opened that space to private expression, it cannot selectively exclude religious viewpoints from it. *Rosenberger*, 515 U.S. at 830–32; *Shurtleff v. City of Boston*, 596 U.S. 243, 258–59 (2022) (holding that Boston's denial of a

12

request to fly a Christian flag solely because it "promot[ed] a specific religion" violated the First Amendment when the city had previously approved numerous secular flags).

The government cannot prefer secular over religious viewpoints in a place where private expression is permitted, regardless of the speaker's identity. Caselaw bears this out in the public-school context. In *Kiesinger v. Mexico Academy and Central School,* a school created a brick sale program and removed bricks inscribed with references to "Jesus" while permitting bricks with generic references to "God" and other secular messages. 427 F. Supp. 2d 182, 185–88 (N.D.N.Y. 2006). The court held that this selective treatment constituted viewpoint discrimination. *Id.* at 194–95. When the government draws distinctions between which religious messages may be expressed, while permitting secular messages to stand, it crosses the constitutional line. *Id.*; *see also Seidman v. Paradise Valley Unified Sch. Dist. No. 69*, 327 F. Supp. 2d 1098, 1111–12 (D. Ariz. 2004) (holding that excluding religious inspirational messages from a tile program while permitting secular inspirational messages constituted viewpoint discrimination).

13

This principle extends beyond physical installations to any context in which the government selectively silences religious voices while permitting comparable secular ones. In *Morgan v. Swanson*, a school prohibited students from distributing items with religious messaging—bookmarks referencing Christianity, tickets to a church play, pencils inscribed with "Jesus loves me"—while permitting distribution of items with secular messaging. 659 F.3d 359, 365–70 (5th Cir. 2011). Prohibiting items "*solely* because of their message," when comparable secular items would have been permitted, is the classic form of viewpoint discrimination. *Id.* at 388. The school's differential treatment was constitutionally unsound, notwithstanding the public-school forum, because it singled out religious expression for disfavored treatment. *Id.*

Here, the school did precisely what the courts in *Kiesinger* and *Morgan* condemned and exactly what the Supreme Court struck down in *Shurtleff*. The school permitted teachers to display secular personal expression in and around their workspaces, including items such as Baby Yoda figurines and sports memorabilia. JA59-60(¶25). In doing so, the school created a zone of expression for its teachers. But when Ms. Castro displayed a crucifix—which was personal, private, and no different in

14

kind from the secular items the school freely permitted—the school intervened and required removal because the expression was *too religious*. This is express viewpoint discrimination. Just as Boston could not deny a flag-raising request solely because the flag "promoted a specific religion," while approving countless secular flags, *Shurtleff*, 596 U.S. at 258–59, the School District cannot permit Baby Yoda while banning the crucifix. The First Amendment forbids this kind of differential treatment.

## III. The School's Policy Triggers Strict Scrutiny Because It Is Neither Neutral Nor Generally Applicable.

Nor can the government selectively burden religious exercise. *See Lukumi*, 508 U.S. at 542–43; *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021). Where a policy is not neutral and generally applicable, it must satisfy strict scrutiny. *Lukumi*, 508 U.S. at 546. The school's policy is neither neutral nor generally applicable—and it cannot survive strict scrutiny.[3]

---

[3] Even if this Court were to apply intermediate scrutiny to public-employee religious expression, the school's policy still fails. *See Nichol v. ARIN Intermediate Unit 28*, 268 F. Supp. 2d 536, 550-52 (W.D. Pa. 2003) (holding school policy banning religious jewelry failed intermediate scrutiny where no important government interest justified prohibiting religious symbolic expression while permitting secular expression); *Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365-66 (3d Cir. 1999) (holding no-beard policy failed heightened scrutiny

"A government policy will not qualify as neutral if it is 'specifically directed at . . . religious practice.'" *Kennedy*, 597 U.S. at 526 (quoting *Smith*, 494 U.S. at 878). "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Trinity Lutheran*, 582 U.S. at 458 (quoting *Lukumi*, 508 U.S. at 533, 542).

The school's policy is not neutral because it specifically targets religious expression. Ms. Castro displayed the crucifix beside her desk for ten years without incident. SPA6. No administrator objected, no complaint was lodged about the crucifix, and no policy was invoked against it. *Id.* Only when Ms. Castro transitioned to the middle school—in the

---

because granting medical exemptions while denying religious exemptions reflected an unconstitutional preference for secular over religious motivations); *Kennedy*, 597 U.S. at 532, 543 (declining to codify an exact level of scrutiny and instead holding that the district's actions would fail both intermediate scrutiny and *Pickering-Garcetti* balancing, noting that there was an elevated standard for purported Establishment Clause concerns); *see also id.* at 566 (Sotomayor, J., dissenting) (performing a "strict scrutiny" analysis, demonstrating that the dissenting justices in *Kennedy* believed heightened scrutiny applied); *but see Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 599 (2008) (in the context of a former public employee's federal civil-rights claim, the "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large").

16

same School District, under the same policy—did the crucifix suddenly become a "problem." SPA3. Nothing about Ms. Castro's conduct or status as a public-school teacher changed; only the building in which the crucifix hung was different. Meanwhile, the school raised no objection to secular personal items displayed by teachers. SPA7.

A policy fails the neutrality requirement if it "'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.'" *Kennedy*, 597 U.S. at 526 (quoting *Lukumi*, 508 U.S. at 533). A truly neutral policy treats all personal expression alike. For example, in *Daniels v. City of Arlington*, the Fifth Circuit upheld a police department's blanket prohibition on pins of any kind on officer uniforms. 246 F.3d 500, 507 (5th Cir. 2001). When a Christian officer challenged the policy as applied to his religious pin, the court found no constitutional violation because the restriction applied uniformly. *Id.* at 505. That is what neutrality looks like.

The school's policy bears no resemblance. It was not the existence of a desk-area keepsake that triggered administrative action; it was the religious nature of what Ms. Castro chose. A policy that leaves secular items undisturbed but moves to enforce only when confronted with religious expression is not neutral in any meaningful sense. And when any

17

rule operates on the principle that "personal expression is permitted, unless it is religious," it is targeted and fails neutrality.

Separately, a policy is not generally applicable when it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534. The inquiry is whether the policy, as enforced, applies evenhandedly to secular and religious conduct, or whether it allows for secular exemptions and exceptions. *See Lukumi*, 508 U.S. at 542–43. Where a policy "fail[s] to prohibit nonreligious conduct that endangers [the government's] interests in a similar or greater degree than [religious conduct]," it is not generally applicable and cannot survive strict scrutiny. *Lukumi*, 508 U.S. at 543; *Fulton*, 593 U.S. at 533.

Here, the School District's policy for classroom decoration is not generally applicable because it was never enforced against secular objects. SPA7. The school's interest in regulating workplace displays, to whatever extent that interest is legitimate as to personal desk areas, was apparently not threatened by any of those items. Personal items became a concern only when the item at issue was religious. Because the school cannot point to a policy that applies consistently to all personal

18

expression, it is left with a policy selectively invoked against religious expression—which is no generally applicable policy at all.

And because the School District's policy is neither neutral nor generally applicable, it is subject to strict scrutiny and "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 521. As discussed below, the Establishment Clause concerns asserted by the school do not overcome this high bar.

## IV. Permitting Ms. Castro's Crucifix Does Not Violate the Establishment Clause Under the Supreme Court's Governing Historical Framework.

The school's Establishment Clause rationale for banning Ms. Castro's personal religious item fails both legally and factually. The Establishment Clause does not require the government to suppress private religious expression whenever a bystander might perceive endorsement. *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 250 (1990) ("The proposition that schools do not endorse everything they fail to censor is not complicated."). Nor does it obligate the government to eradicate from the public square anything with a religious character. *Van Orden v. Perry*, 545 U.S. 677, 699 (2005) ("[T]he Establishment Clause does not

compel the government to purge from the public sphere all that in any way partakes of the religious."). A speculative endorsement concern that never materialized across ten years of identical conduct in the same School District, under the same policy, is not a compelling governmental interest.

That concern is also legally obsolete. *Kennedy* expressly abandoned the *Lemon* reasonable-observer test, replacing it with a historical-practices-and-understandings framework. *Kennedy*, 597 U.S. at 534–36. The question is no longer what a potential observer might infer, but whether the practice at issue is consistent with the nation's historical tradition and hallmarks of establishment. *Id.*; *see also Shurtleff*, 596 U.S. at 285–88 (Gorsuch, J., concurring) (listing historical hallmarks of establishment). Under that framework, the mere possibility that someone might incorrectly attribute Ms. Castro's private devotional display to the school cannot extinguish her Free Exercise rights. If a coach's midfield prayers did not constitute an Establishment Clause violation, a small crucifix situated privately beside a desk does not approach that line. *Kennedy*, 597 U.S. at 537.

History confirms this conclusion. The Northwest Ordinance of 1787, re-enacted by the First Congress in 1789—the same Congress that proposed the First Amendment—expressly encouraged religious and moral instruction in schools. *See* Erin Hawley, *A Mandate to Discriminate?: Why the Establishment Clause Does Not Justify the Exclusion of Religious Charter Schools*, 9 Harv. J.L. & Pub. Pol'y: Per Curiam 1, 18–19 (2025). The Clause was designed to prevent a national church, not to exile private religious expression from public life. A teacher quietly displaying a crucifix beside her desk falls well short of anything the Establishment Clause was meant to prevent.

In any event, the school cannot invoke the Establishment Clause to justify what the Free Exercise Clause forbids. *Kennedy* resolved this tension directly: permitting private religious expression neither establishes religion nor serves as endorsement by the government. *See* 597 U.S. at 537. The two Clauses must be read in harmony, not weaponized against each other. *See* Stephanie H. Barclay, *The Religion Clauses After Kennedy v. Bremerton School District*, 108 Iowa L. Rev. 2097, 2109–11 (2023).

**V. The Free Exercise Clause Protects Teachers Maintaining Discreet Religious Symbols That Generate Nothing More Than an Inactionable "Mere Shadow" of Concern Under the Establishment Clause.**

A. <u>Public-school officials cannot invoke the Establishment Clause to act without neutrality toward religion.</u>

Neutrality toward religion is required for the religious-liberty protections of the First Amendment, both in safeguarding individual free exercise and preventing an establishment of religion. *See Kennedy*, 597 U.S. at 526 (quoting *Smith*, 494 U.S. at 878). The government must both refrain from abridging free exercise and avoid actively sponsoring religion.

This Establishment Clause concern looms in public schools, where teachers exercising their personal religious practices may risk propagating religion through state-created means. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (quoting *Widmar v. Vincent*, 454 U.S. 263, 271 (1981)) (noting that the state may have a compelling interest in avoiding an Establishment Clause violation in the public-school context). Nevertheless, "[b]y no means do [the Religion Clauses of the First Amendment] impose a prohibition on all religious activity in our public schools . . . religious liberty protected by the

22

Constitution is abridged [only] when the State affirmatively sponsors the particular religious practice of prayer." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313 (2000); *see Friedman v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 781 F.2d 777, 785 (10th Cir. 1985) (Barrett, J., dissenting) ("The First Amendment does not forbid all reference to religion in public schools").

Public-school teachers do not leave behind their fundamental religious liberty when they arrive at school. *Kennedy*, 597 U.S. at 527 (quoting *Tinker*, 393 U.S. at 506). Teachers bear free exercise protections surmountable only through satisfying strict scrutiny. The Supreme Court has recently reasserted the protection for free exercise rights in public schools, declaring "our precedents remind us that the First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Id.* (quoting *Tinker*, 393 U.S. at 506).

More than "a mere shadow" of conflict with the Establishment Clause is required, demonstrating a heightened interest in protecting the public employee's rights than would normally occur in a pure speech *Pickering-Garcetti* analysis. *Id.* at 532, 543. This higher standard of

23

protection preserves teachers' private free exercise on school grounds, which includes the discreet maintenance of religious symbols.

B. <u>If the decision below stands, it will burden the sincere religious beliefs of innumerable public-school teachers of minority faiths.</u>

The district court's reasoning threatens the religious liberty of minority-faith public-school teachers nationwide. Schools would be able to bar teachers from innumerable religious practices that raise no substantial Establishment Clause concerns, thereby permitting the government to create rules targeting religion. This threat falls disproportionately on teachers, who self-identify as more religious or spiritual than Americans in other professions. Jensen & Scott at 30.

First, many religions require adherents to wear certain garb as part of their identity and practice. Under the logic of the decision below, schools could prohibit teachers from wearing these items simply because they are religious. Examples abound. Hindus wear the tilak head marking to distinguish their sectarian affiliation. Sikhism requires wearing a turban (dastar) that is important to carry out other obligations like the practice of uncut hair (kesh) and wearing of the kangha comb. *See Vaaran Bhai Gurdas*, Vaar 32, Pauri 19 (explaining Sikh articles of faith). Orthodox Judaism similarly requires all men to wear a yarmulke, or kippah.

24

*See Mishnah Berurah* 2:11. In Islam, the Quran commands Muslim women to cover their heads and bodies, both for modesty and identification as a Muslim. *See Surah Al-Ahzab* 33:59; *Surah An-Nur* 24:31. Members of Catholic clergy, too: sisters wear habits and priests wear clerical collars.[4] All of these varied religious obligations could be imperiled. Even wearing items of religious jewelry that depict the Star of David, cross, crescent, Om (ॐ), and other symbols, could be subject to prohibition.

Second, schools could also prohibit teachers from maintaining personal religious symbols kept for prayer or devotion in private areas of the classroom. Many faith traditions use such symbols. Hindus, for example, often keep various types of rudraksha or japa mala prayer beads that they maintain with them for personal prayer. And several of these Hindu symbols are also commonly used in the religious practices of related faiths like Buddhism, Jainism, and Sikhism. Catholics partake in similar

---

[4] This situation may seem unlikely, but significant controversy erupted in the late nineteenth century regarding religious women (sisters) seeking employment as teachers in public schools, often for the purpose of raising funds for their convents. *See, e.g., Hysong v. School Dist. of Gallitzin Borough*, 30 A. 482 (Pa. 1894). It is possible that, in the modern day, an adequately certified sister could seek to serve as a public-school teacher, or perhaps fill in as a substitute teacher, while wearing her habits in the interest of maintaining her vows.

practices, often maintaining a rosary, cross, or crucifix for use in private prayer. Similarly, Muslims keep prayer beads called tasbih or misbaha, for religious purposes. Muslims also keep prayer rugs, sajjadah, for their prayer practices that include the midday Dhuhr call to prayer that Muslim teachers often fulfill during their lunch time.

These examples demonstrate the breadth of religious practices, especially of minority faiths, that may be affected if the decision below stands. The lower court's rule could even bar teachers from keeping religious texts—such as the Bible, Tanakh, Quran, and Vedas—at their desks for personal use during non-instructional time. In short, the reasoning would not simply affect a single classroom display; it has the potential to endanger countless minority faith practices and could curtail teachers' religious freedom. The Constitution protects teachers' right to maintain these items for personal religious exercise. Allowing schools to prohibit such practices would transform public employment into a condition that requires teachers to set aside their faith at the classroom door.

C. <u>The government may not bar teachers from having religious symbols on the job when those items are meant for discreet personal use.</u>

The government violates free exercise when it bars public-school employees from having religious symbols on the job, meant for their own private and discreet use. Courts across the country have consistently agreed on this.

    i.    <u>A public-school teacher keeping a Bible on or near their desk for personal use is constitutionally protected activity.</u>

Courts have held that teachers bear a free exercise right to maintain a Bible on or near their classroom desk for personal use. For example, the Ohio Supreme Court held that teachers enjoy free exercise rights to maintain a Bible on their desks. *Freshwater v. Mt. Vernon City Sch. Dist. Bd. of Educ.*, 1 N.E.3d 335, 352 (Ohio 2013). In *Freshwater*, a middle school science teacher was fired for insubordination, in part for failure to comply with the principal's orders to remove his personal Bible from his desk. *Id.* at 339–41. Although it ultimately upheld the teacher's firing on other grounds, the court emphasized that the principal's order to remove the Bible was "neither reasonable nor valid" because it "infringed without justification upon conduct protected by the Free Exercise Clause." *Id.* at

352. The court explained that the principal's order targeted religious activity, justifiable only with a "grounded in reality" Establishment Clause violation. *Id.* at 352–53. Here, however, "the inconspicuous presence of [the teacher]'s personal Bible posed no threat to the Establishment Clause" since it was kept in a "personal workspace, rather than in a public, student-accessible area," and it was "inconspicuous" in a manner not yielding a legitimate Establishment Clause concern. *Id.* at 353–54.

A district court reached a similar result in *Nichols v. Caroline County Board of Education*, No. Civ. JFM–02–3523, 2004 WL 350337 (D. Md. Feb. 23, 2004). *Nichols* involved a public-school teacher's Title VII claim of religious discrimination over his termination for giving his students assignments involving the Bible. *Id.* at *1. Although the court granted the school district's summary judgment motion, it noted that the school allowed the teacher to maintain a copy of the Bible on the table behind his desk, implying that there would be no Establishment Clause violation from a teacher keeping a recognizable religious item near their desk. *Id.* at *12 n.15.

Although not involving a classroom, the court in *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004), held that individual religious liberty

28

protects public employees' right to maintain "personal religious effects" at the workplace. In *Warnock*, a teacher brought a § 1983 claim against school district officials, claiming religious harassment from the superintendent's office display of a Bible and a framed scripture quote. *Id.* at 1079. The Eighth Circuit rejected the teacher's claim of religious harassment, holding that the superintendent keeping a visible Bible and scripture quote in his office was "constitutionally protected under the free speech and free exercise clauses." *Id.* at 1082. Additionally, there was no Establishment Clause violation because the conduct was "clearly personal and does not convey the impression that the government is endorsing it." *Id.* These cases demonstrate that the mere visual of a Bible on or near a public-school teacher's desk, used for the teacher's personal religious exercise and not for student instruction, is constitutionally protected free exercise.

    ii.   <u>School districts cannot create rules specifically prohibiting religious items.</u>

Religious symbols are also protected when worn by teachers in the classroom as part of their sincere beliefs and practice. In *Nichol v. ARIN Intermediate Unit 28*, a district court held that a school policy banning religious jewelry was impermissible because it targeted religious

practices. 268 F. Supp. at 551. There, school administrators fired a public-school teacher for refusing to conceal a cross pendant she wore. *Id.* at 541. In enjoining enforcement of the school's religious jewelry ban, the court expounded that the policy was not neutral toward religion because it "punishe[d] *only* symbolic speech by its employees having religious content or viewpoint, while permitting its employees to wear jewelry containing secular messages or no messages at all." *Id.* at 548. The court outright rejected any Establishment Clause concern, explaining that there is a "crucial distinction between 'government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect.'" *Id.* at 549 (quoting *Rosenberger*, 515 U.S. at 841).

Notably, the Supreme Court's ruling in *Kennedy* explained in dicta that both a Jewish teacher wearing a yarmulke and a Muslim teacher wearing a headscarf to school would undoubtedly be constitutionally protected. *Kennedy*, 597 U.S. at 531, 540. Religious symbols are protected elements of religious liberty. The government cannot target the mere presence of these symbols through non-neutral rules. *See Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 455 (E.D.N.Y. 2014) (finding

a genuine question of fact existed in a Title VII religious discrimination case on whether the Transit Authority could satisfy heightened scrutiny in demoting a Muslim bus driver for her refusal to remove her khimar head covering to comply with its headwear policy).

D. Neither outmoded precedents nor the district court's mistaken overextension of *Garcetti* support the conclusion that Ms. Castro had no free exercise rights to hang the crucifix at her desk.

The district court's conclusion that Ms. Castro had no free exercise rights rests on legal authorities that do not control this case. First, older cases implicitly followed by the district court allowing schools to prohibit teachers from wearing religious garb no longer apply. And second, the district court misapplied *Garcetti* by extending a public-employee speech doctrine to religious exercise.

i. Previous rulings permitting the singling out of religious practices do not control here.

Although the above cases demonstrate free exercise protection for public-school teachers discreetly maintaining religious symbols in the classroom for personal use, sparse caselaw from the last century allowed school districts to prohibit religious garb for public-school staff. In *Cooper v. Eugene School District No. 4J*, the Oregon Supreme Court rejected a Sikh teacher's challenge of her suspension for wearing Sikh garb and a

31

turban because, the court reasoned, the garb prohibition maintained religious neutrality in public schools as required by the Establishment Clause and protected student free exercise rights. 723 P.2d 298, 310 (Or. 1986), *abrogated on other grounds by, Kellas v. Dep't of Corrs.*, 145 P.3d 139 (Or. 2006); *see also United States v. Bd. of Educ. for Sch. Dist. of Phila.*, 911 F.2d 882 (3d Cir. 1990) (upholding Pennsylvania's identical garb statute on similar facts).

These decisions do not control here for three reasons. First, these prohibitions on religious garb in public schools were borne out of anti-Catholic animus at the end of the nineteenth and early twentieth centuries, meant to exclude Catholic sisters from teaching in public schools. *See Cooper*, 723 P.2d at 308–09; *Dist. of Phila.*, 911 F.2d at 893–94. Second, state legislatures across the nation, including Oregon and Pennsylvania, have repealed their prohibitions on religious garb. *See, e.g.,* 24 Pa. Stat. and Cons. Stat. § 11–1112 (West 2024) (repealing Pennsylvania's statutory prohibition on teachers wearing religious garb). Third, subsequent decisions have called into question both *District of Philadelphia* and *Cooper*. Third Circuit cases from this millennium demonstrate that, for example, the Pennsylvania Garb Statute likely could not survive a

free exercise challenge. *See Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 174 n.33 (3d Cir. 2002) (quoting *Dist. of Phila.*, 911 F.2d at 889) (rescinding the *District of Philadelphia* dictum stating that schools have "a compelling interest in maintaining the appearance of religious neutrality" because that dictum "may be inconsistent with *Widmar*'s principle that an interest in more separation between church and state than the Establishment Clause requires cannot justify restricting rights shielded by the Free Exercise Clause"). Conclusively, *Kennedy* considers teachers wearing religious garb, like yarmulkes and hijabs, to school to be constitutionally protected free exercise. 597 U.S. at 531, 540.

Furthermore, the district court below relied on *Johnson v. Poway Unified School District*, 658 F.3d 954 (9th Cir. 2011), but that case is distinguishable, too. *Johnson* involved a teacher's claim against the school district for forcing him to remove sizeable banners containing religious messaging on the walls of his classroom. *Id.* at 958. In rejecting the teacher's claim, the Ninth Circuit concluded that the banners were the teacher's obvious attempt to take "advantage of his position to press his particular views upon the impressionable and 'captive' minds before him." *Id.* at 968. But Ms. Castro's religious item was not intended to

33

communicate anything to anyone else at all; it was a private worship symbol placed low on the wall by her desk in a manner that obstructed it from view of students in the classroom. JA17(¶15–17). That is nothing like the large banners in *Johnson*.

> ii. The district court erred by excessively relying on *Garcetti.*

The district below hyper-extended *Garcetti* in a manner that was never intended. For one, *Garcetti* pertained to a dispute involving only pure speech; it did not contemplate public-employee religious liberty, and subsequent Supreme Court cases have not held that *Pickering-Garcetti* balancing applies to religious expression as it does for pure speech claims. The court below also misconstrued *Garcetti* in concluding that it invalidated *Nichol* because it included *Pickering* in its analysis. This assertion is without basis because (1) the *Nichol* court did not use *Pickering* in its Religion Clause analysis and (2) *Garcetti* did not invalidate *Pickering*: it added a consideration of whether the public employee was speaking pursuant to their official duties, where no First Amendment protection existed. *See Nichol*, 268 F. Supp. 2d at 549–51; 547 U.S. at 417–18 (2006). Considering *Nichol* involved the wearing of a cross pendant that was

undoubtedly not within the official duties of the public employee, *Garcetti*'s official duties consideration is completely irrelevant.

## CONCLUSION

The district court erred in applying *Pickering-Garcetti* balancing review to uphold the school district's non-neutral policy that violated Ms. Castro's fundamental religious liberty to have a crucifix discreetly displayed at her desk. The Court should reverse.

Dated: March 25, 2026

Respectfully submitted,

*/s/Denise M. Harle*
**FLORIDA STATE UNIVERSITY**
**COLLEGE OF LAW**
**FIRST AMENDMENT CLINIC**
Denise M. Harle
425 W. Jefferson St.
Tallahassee, Florida 32301
(850) 644-3255
dharle@law.fsu.edu

Abigail Morgan*
Nicholas Fernandez*
*Law Students at Florida State
University College of Law

*Counsel for Amici Curiae*
*American Hindu Jewish Congress Inc.*
*and Religious Freedom Institute*

35

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and Local Rule 29.1(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,795 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2021 in 14-point Century Schoolbook font.

Dated: March 25, 2026

/s/ Denise M. Harle
Denise M. Harle

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2026, I electronically filed the foregoing brief with the United States Court of Appeals for the Second Circuit using the CM/ECF (ACMS) system and served all counsel of record in this case via electronic service through the CM/ECF (ACMS) system.

Dated: March 25, 2026

/s/ *Denise M. Harle*
Denise M. Harle