# 25-3047

## United States Court of Appeals

FOR THE SECOND CIRCUIT

MARISOL ARROYO-CASTRO,

*Plaintiff-Appellant,*

– v. –

ANTONY GASPER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
MARYELLEN MANNING, IN HER INDIVIDUAL AND OFFICIAL CAPACITY,
DARIO SOTO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
ANDREW MAZZEI, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

*Defendants-Appellees,*

On Appeal from U.S. District Court for the District of Connecticut
No. 3:25-CV-00153(SFR)

## BRIEF FOR DEFENDANTS - APPELLEES

PETER J. MURPHY
SARAH N. NIEMIROSKI
SHIPMAN & GOODWIN LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103-1919
(860) 251-5000

## TABLE OF CONTENTS

INTRODUCTION.................................................................................1

COUNTER STATEMENT OF THE ISSUES.....................................2

STATEMENT OF THE CASE ............................................................3

    I.    PLAINTIFF HANGS A CRUCIFIX ON THE CLASSROOM WALL RESULTING IN COMPLAINTS. ...............................3

    II.    SCHOOL OFFICIALS PLACE PLAINTIFF INDEFINITELY ON PAID LEAVE FOR REFUSING INSTRUCTIONS TO MOVE THE CRUCIFIX OUT OF STUDENTS' VIEW.........6

    III.    THIS FEDERAL § 1983 LAWSUIT......................................9

STANDARD OF REVIEW..................................................................10

SUMMARY OF THE ARGUMENT.....................................................11

ARGUMENT .....................................................................................13

    I.    THE DISTRICT COURT PROPERLY FOUND THAT PLAINTIFF WAS SPEAKING WITHIN THE SCOPE OF HER JOB DUTIES WHEN SHE DISPLAYED THE CRUCIFIX ON THE CLASSROOM WALL. ........................14

        A.    The District Court correctly found that decorating the classroom walls with expressive items is job-related speech. ..........................................................17

            i.    Creating the Physical Classroom Environment Is a Core Duty of a Teacher at DiLoreto. ...............19

            ii.    Courts consistently find that speaking to students in a classroom is a core duty of a teacher's job responsibilities.............................22

            iii.    The District Court appropriately interpreted Plaintiff's job duties. ...........................................27

    II.    THE DISTRICT COURT PROPERLY DETERMINED THAT PLAINTIFF WAS NOT REASONABLY LIKELY TO SUCCEED ON HER FREE EXERCISE CLAIM ON OTHER GROUNDS. ..........................................................32

A.  Pickering/Garcetti step 2 properly applies to hybrid claims like Plaintiff's.....................................33

B.  The District Court appropriately gave Defendants breathing space in addressing the crucifix.................35

III.  THIS COURT SHOULD REMAND THE CASE FOR ADDITIONAL PROCEEDINGS IF NECESSARY..............47

A.  Plaintiff's Speech Was Disruptive. ..............................49

B.  Plaintiff failed to show a substantial likelihood of success even if strict scrutiny applied to her free exercise claim. ...........................................................55

i.  The school district had a compelling interest in removing the crucifix from the wall. ..................57

ii.  This teacher's crucifix openly broadcast a particular religion to a captive seventh-grade audience. ........................................................59

iii.  Defendants' response was narrowly tailored to the circumstances. .............................................63

C.  The District Court should make initial findings on the remaining elements of Plaintiff's request for injunctive relief...........................................................................67

CERTIFICATE OF COMPLIANCE ..................................................71

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of America v. Cuomo,*
983 F.3d 620 (2d Cir. 2020) ............................................................... 63

*Am. Legion v. Am. Humanist Ass'n,*
588 U.S. 29 (2019) .............................................................................. 45

*Bronx Household of Faith v. Board of Education,*
750 F.3d 184 (2d Cir. 2014) ................................................... 35, 38, 39

*Brown v. Chicago Board of Education,*
824 F.3d 713 (7th Cir. 2016) .............................................................. 24

*Carroll v. Associated Musicians of Greater N.Y.,*
284 F.2d 91 (2d Cir. 1960) ................................................................. 11

*Connick v. Myers,*
461 U.S. 138 (1983) ...................................................................... 36, 53

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.,*
447 U.S. 530 (1980) ............................................................................ 53

*Downing v. W. Haven Bd. of Educ.,*
162 F. Supp. 2d 19 (D. Conn. 2001) ................................................... 36

*Downs v. Los Angeles Unified School District,*
228 F.3d 1003 (9th Cir. 2000) ............................................................ 25

*Edwards v. Aguillard,*
482 U.S. 578 (1987) ........................................................ 59, 60, 61, 66

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill.*
*Sch. Dist.,*
624 F.3d 332 (6th Cir. 2010) .................................................. 19, 23, 24

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ....................................................................... *passim*

*Gillespie & Co. of N.Y. v. Weyerhaeuser Co.,*
533 F.2d 51 (2d Cir. 1976) ................................................................ 11

*In re Grand Jury Subpoenas Dated Sept. 13, 2023,*
128 F.4th 127 (2d Cir. 2025) ............................................................. 43

*Hanson Tr. PLC v. ML SCM Acquisition, Inc.,*
781 F.2d 264 (2d Cir. 1986) ............................................................. 11

*Hazelwood Sch. Dist. v. Kuhlmeier,*
484 U.S. 260 (1988) .................................................................... 14, 68

*Heim v. Daniel,*
81 F.4th 212 (2d Cir. 2023) .............................................................. 49

*Helland v. S. Bend Cmty. Sch. Corp.,*
93 F.3d 327 (7th Cir. 1996) .............................................................. 46

*Horton v. Meskill,*
172 Conn. 615 (1977) ........................................................................ 61

*Jeffery v. City of New York,*
113 F.4th 176 (2d Cir. 2024) ............................................................ 64

*JLM Couture, Inc. v. Gutman,*
91 F.4th 91 (2d Cir. 2024) ................................................................ 11

*Johnson v. Poway Unified Sch. Dist.,*
658 F.3d 954 (9th Cir. 2011) .............................................. 23, 25, 28

*Jusino v. Fed'n of Cath. Teachers, Inc.,*
54 F.4th 95 (2d Cir. 2022) ................................................. 41, 43, 57

*Kennedy v. Bremerton School District,*
597 U.S. 507 (2022) ............................................................... *passim*

*Kissinger v. Bd. of Trs. of the Ohio State Univ., Coll. of
Veterinary Med.,*
5 F.3d 177 (6th Cir. 1993) ................................................................ 35

*Knight v. Conn. Dep't of Pub. Health,*
275 F.3d 156 (2d Cir. 2001) ...................................... 33, 34, 52, 53, 55

iv

*Kravitz v. Purcell,*
   87 F.4th 111 (2d Cir. 2023) .................................................................. 56

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,*
   508 U.S. 384 (1993) ...................................................................... 37, 41

*Lane v. Franks,*
   573 U.S. 228 (2014) ...................................................................... 18, 22

*Leadenhall Cap. Partners LLP v. Advantage Cap. Holdings
   LLC,*
   171 F.4th 155 (2d Cir. 2026) ............................................................... 11

*Leebaert v. Harrington,*
   332 F.3d 134 (2d Cir. 2003) ................................................................ 34

*Lego A/S v. Zuru Inc.,*
   No. 24-634-cv, 2025 WL 915027 (2d Cir. Mar. 26, 2025) ............. 48, 56

*Lekuntwane v. Help at Home CT, LLC,*
   No. 24-1662, 2025 WL 2658821 (2d Cir. Sept. 17, 2025) ................... 48

*Mahmoud v. Taylor,*
   606 U.S. 522 (2025) ............................................................................ 69

*Marchi v. Bd. of Coop. Educ. Servs. of Albany,*
   173 F.3d 469 (2d Cir. 1999) ...................................................... *passim*

*Martins v. Pidot,*
   663 F. App'x 14 (2d Cir. 2016) ........................................................... 68

*Matthews v. City of New York,*
   779 F.3d 167 (2d Cir. 2015) ................................................... 18, 19, 49

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.,*
   474 F.3d 477 (7th Cir. 2007) .................................................... *passim*

*Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt.,
   LLC,*
   105 F.4th 46 (2d Cir. 2024) ............................................................... 40

v

*People of State of Ill. ex rel. McCollum v. Bd. of Ed. of Sch.*
 *Dist. No. 71, Champaign Cnty., Ill.,*
 333 U.S. 203 (1948)..................................................................66

*McCreary County v. ACLU of Ky.,*
 545 U.S. 844 (2005)..................................................................62

*McCullen v. Coakley,*
 573 U.S. 464 (2014)..................................................................63

*Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York,*
 336 F.3d 185 (2d Cir. 2003) ................................................ 34, 50, 53

*Mid Vt. Christian Sch. v. Saunders,*
 151 F.4th 86 (2d Cir. 2025)......................................................68

*New York State Rifle & Pistol Ass'n v. Bruen,*
 597 U.S. 1 (2022)......................................................................65

*Pickering v. Board of Ed. of Township High Sch.,*
 391 U.S. 563 (1968)................................................................. *passim*

*Rankin v. McPherson,*
 483 U.S. 378 (1987)............................................................... 50, 51

*Red Earth LLC v. United States,*
 657 F.3d 138 (2d Cir. 2011) ....................................................67

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.,*
 490 U.S. 477 (1989)..................................................................43

*Rosenberger v. Rector and Visitors of U. of Virginia,*
 515 U.S. 819 (1995)..................................................................51

*Ross v. Breslin,*
 693 F.3d 300 (2d Cir. 2012) .....................................................18

*School District of Abington Township v. Schempp,*
 374 U.S. 203 (1963)..................................................................66

*Shara v. Maine-Endwell Cent. Sch. Dist.,*
 46 F.4th 77 (2d Cir. 2022)........................................................17

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022)...................................................... 27, 29, 30

*Silver v. Cheektowaga Cent. Sch. Dist.*,
  670 F. App'x 21 (2d Cir. 2016) ........................................... 36

*Skoros v. City of New York*,
  437 F.3d 1 (2d Cir. 2006) ................................................ 36

*Stinson v. Fayetteville Sch. Dist. No. 1*,
  ___ F. Supp. 4th ____ (W.D. Ark. 2026)............................... 44

*Stinson v. Fayetteville Sch. Dist. No. 1*,
  798 F. Supp. 3d 931 (W.D. Ark. 2025)........................... 41, 54

*Stone v. Graham*,
  449 U.S. 39 (1980).................................................. *passim*

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969)................................................. 37, 40

*Tucker v. State of Cal. Dept. of Educ.*,
  97 F.3d 1204 (9th Cir. 1994)..................................... *passim*

*Union of Needletrades, Indus. & Textile Emps., AFL-CIO,*
  *CLC v. U.S. I.N.S.*,
  336 F.3d 200 (2d Cir. 2003) ............................................. 39

*United States v. Jacobson*,
  15 F.3d 19 (2d Cir. 1994) ................................................ 48

*Wallace v. Jaffree*,
  472 U.S. 38 (1985)........................................................ 67

*Washegesic v. Bloomingdale Pub. Sch.*,
  33 F.3d 679 (6th Cir. 1994).................................... 46, 57, 63

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021).................................... 13, 67, 68

*Weintraub v. Bd. of Educ.*,
  593 F.3d 196 (2d Cir. 2010) ............................................. 18

vii

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) .................................................................. 69

*Wood v. Fla. Dep't of Educ.*,
  142 F.4th 1286 (11th Cir. 2025) ........................................... 15, 23, 24

*Ziparo v. CSX Transp., Inc.*,
  160 F.4th 314 (2d Cir. 2025) .................................................... 40

**Statutes**

Conn. Gen. Stat. § 10-184 ............................................................. *passim*

Conn. Gen. Stat. § 10-220 ......................................................................3

Conn. Gen. Stat. § 10-157 .................................................................... 52

Conn. Gen. Stat. § 52-571b ....................................................................9

**Other Authorities**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and
  Procedure § 2948 (2d ed. 1995) .......................................................... 14

U.S. Const. amend. I ........................................................................... 15

## **INTRODUCTION**

After fielding complaints about a foot-tall crucifix displayed in a middle school classroom, administrators employed by the Consolidated School District of New Britain (the "District") approached the teacher who put the crucifix to the classroom wall, plaintiff Marisol Arroyo-Castro, and requested that she relocate this item out of students' view during instructional hours. The administrators proposed alternatives that would have allowed Plaintiff to view and use the crucifix while on breaks or on her personal time. Despite her union's counseling, Plaintiff refused and insisted that she needed it on the wall at all times. Because of her refusal, the District placed Plaintiff on paid leave until she agreed to relocate the crucifix during instructional hours.

Plaintiff then sought the remarkable relief of a preliminary injunction commanding public school officials to allow the crucifix to be displayed on a seventh-grade classroom wall, in view of students, as a form of purposeful religious expression. Plaintiff's request was based largely on a recent Supreme Court decision recognizing a high school coach's First Amendment right to engage in a brief on-field postgame prayer during his personal time. That decision did not overturn the

litany of authority precluding inherently sectarian classroom displays inside public schools or explicitly religious messaging to captive student audiences. Moreover, that case did not overturn precedent limiting an employee's First Amendment rights when they are speaking pursuant to their official job duties.

Based on applicable precedent, the District Court correctly found that, because Plaintiff's job duties as a teacher specifically included decorating the classroom walls, she had no First Amendment right to place the crucifix on the wall. Further, school administrators are entitled to leeway when addressing a substantial risk of conflict between an employee's First Amendment rights and the Establishment Clause, which precludes Plaintiff's requested injunctive relief. Further, the situation's equities independently counsel against an injunction that would reinstall the cross on a classroom wall during this lawsuit. Accordingly, the District Court appropriately denied Plaintiff's request for unprecedented injunctive relief.

## COUNTER STATEMENT OF THE ISSUES

1. Whether the district court properly determined that Plaintiff was speaking pursuant to her official duties and therefore had not

demonstrated a likelihood of success on her free speech and free exercise claims.

2.    Whether the district court properly determined that Plaintiff had not demonstrated a likelihood of success at step two of the *Pickering/Garcetti* framework on her free exercise claim under the leeway doctrine.

3.    Whether Plaintiffs claims fail at step two of the *Pickering/Garcetti* framework and under strict scrutiny review.

## STATEMENT OF THE CASE

## I.    PLAINTIFF HANGS A CRUCIFIX ON THE CLASSROOM WALL RESULTING IN COMPLAINTS.

In Connecticut each local board of education "shall maintain good public elementary and secondary schools" that "provide an appropriate learning environment for all its students." Conn. Gen. Stat. § 10-220. Per district policy, teachers within the District are tasked with setting the classroom environment. SPA4; JA195. The policy recognizes that the "classroom environment has a powerful influence on student performance and behavior," and directs that the "physical aspects of a classroom … should be carefully considered with both individual students' needs and instructional goals in mind." *Id.* The classroom

environment must be carefully considered, as attendance at school is compulsory. "All students enrolled in the Consolidated School District of New Britain are required to attend school on a regular basis." SPA4; JA190; Conn. Gen. Stat. § 10-184. Enrolled students cannot opt out of their education, and failure to attend can result in a referral to the state child protective agency "due to educational neglect." SPA4; JA173.

During the 2024-2025 school year Marisol Arroyo-Castro, a long-time teacher for the District at DiLoreto Elementary & Middle School, was the school's only seventh grade social studies teacher. SPA3-4. In her classroom she hosted a homeroom class, taught four sections of social studies, and taught an advisory class of students needing reading and math support. SPA3. All in all, around 100 students spent time in her classroom daily. JA161, ¶ 4.

Against this backdrop, Plaintiff decorated her seventh-grade social studies classroom. On the wall near her teacher's desk, she displayed a poster for a social studies textbook, instructions for operating laptop computers, a printout entitled "Student Daily Schedule," and various drawings of scenes and animals, some by students. SPA5; JA67. On that same wall, surrounded by these items and in direct view of student

4

desks, Plaintiff permanently affixed a foot-tall crucifix. SPA5-6; JA163, ¶ 10. It is undisputed that students could see the crucifix in the classroom during instructional hours. SPA6-7. Just as students could see the crucifix, Plaintiff could as well, as she would "look at the crucifix" during the school day, "when the task of teaching young students proved particularly challenging." JA59, ¶ 20. Plaintiff claimed that the crucifix helped her "pray silently in [her] personal time," including while on "lunch breaks." SPA6; JA59, ¶¶ 20-21.

The crucifix garnered complaints. In a conversation with a seventh-grade science teacher, two students complained that Plaintiff had been exposing students to religion in the classroom. SPA7; JA162, ¶ 9. Appearing upset, the students specifically mentioned the crucifix near the teacher's desk. SPA7. They additionally complained that Plaintiff had been making religious comments in their presence in class, saying, for example, that students needed Jesus or making other references to God in a chastising, non-joking manner. JA162 ¶ 9.

The science teacher shared the complaints with DiLoreto's Assistant Principal, Andrew Mazzei, and also expressed concern about middle schoolers' being subjected to any teachers' religious ideologies or

religious items like the crucifix, unconnected to the curriculum's content. JA162, ¶ 9. In the days after, Mazzei heard from students that Castro had told students things such as "You need Jesus"; or that "Papa god doesn't like liars"; or that "Papa God is probably disappointed in you"; or calling them sinners. JA162, ¶ 11. Mazzei then elevated the complaints about the crucifix to District Chief of Staff Maryellen Manning. JA162, ¶ 12.

## II. SCHOOL OFFICIALS PLACE PLAINTIFF INDEFINITELY ON PAID LEAVE FOR REFUSING INSTRUCTIONS TO MOVE THE CRUCIFIX OUT OF STUDENTS' VIEW.

On December 3, 2024, Assistant Principal Mazzei emailed Plaintiff "to discuss a concern" that had been brought to his attention "regarding a cross displayed in [her] classroom." SPA8; JA60, ¶ 27. At the meeting, Mazzei instructed Plaintiff to remove the crucifix from the classroom wall, and that noncompliance would "lead to insubordination and disciplinary measures." SPA8; JA60, ¶ 28.

Plaintiff did not remove the crucifix. That following Tuesday, December 10, she met with administrators and a representative from the teacher's union. SPA8; JA61, ¶ 30. At the meeting, Manning proposed placing the crucifix in a desk drawer, as she could pull it out

when alone. SPA8; JA164, ¶ 16. When that idea was rejected, the union representative then suggested hanging the crucifix from the desk drawers, which Plaintiff entertained insofar as she could still "walk near it and see it." *Id.*; SPA9. Ultimately, the union representative proposed that Plaintiff hang the crucifix underneath her desk, next to the drawers, with magnets. Plaintiff agreed with the proposal and hung the crucifix underneath the desktop, but by the next morning, she "returned the crucifix to its place on the wall." JA62, ¶ 35.

The District responded with a letter of reprimand, dated December 11, 2024. JA82. Among other things, this letter reiterated several key messages that administrators had discussed with Plaintiff the day before – for example that:

- "When a public school employee hangs a religious artifact in their classroom, it sends the message that the school district (which is an arm of the government) is promoting that religion, so putting that religious artifact on the wall of the school building is not legally permissible."
- "You have told the administration that you are hanging this cross permanently."
- "You have also told the administration that this cross is not tied to a specific curricular unit."
- "The Board of Education owns and controls the classroom walls. So, by hanging this on the classroom wall, you are, in effect,

7

saying that 'the New Britain Board of Education endorses this religion."

SPA10. That day, Mr. Soto personally implored Plaintiff to relocate the crucifix from the wall, but she refused. After negotiating with her again on December 12, to no avail, the District suspended her for two days without pay, confirmed by written notice that same day. SPA11. The District invited Plaintiff to return to work on December 16, provided that she "compl[ied] with the request from [he]r employer." *Id.* When Plaintiff indicated she could not conceal or remove the crucifix from the wall, the District placed her on indefinite paid leave. SPA12; JA64, ¶ 48. On December 20, 2024, Ms. Castro sent a text message via the student communication portal that said, "I have been placed on Administrative Leave for refusing to remove a Crucifix from my desk area." SPA12; JA164, ¶ 20. "The lesson to learn here is that doing what is right is not always easy." SPA12; JA164-65, ¶ 20. A student shared this message with a teacher, who relayed the posting to administrators. SPA12; JA164, ¶ 21. A parent later told Mr. Mazzei that the parent thought the text message was an inappropriate thing to send families. *Id.*

8

During a conference call on January 24, 2025, the Superintendent attempted yet again to reach an accommodation, asking "seven times" whether Plaintiff could simply "relocate the crucifix." SPA12; JA64, ¶ 50. She confirmed, through counsel, that she would not move the crucifix "so long as other teachers were permitted to keep personal expressive items in similar locations as where [she] had the crucifix before." *Id.*

## III. THIS FEDERAL § 1983 LAWSUIT

On January 30, 2025, Plaintiff filed this lawsuit for declaratory and injunctive relief under 42 U.S.C. § 1983 against Defendants in their individual and official capacities. The complaint's first and second claims assert violations of the freedom of speech and religious exercise under the First Amendment, each based on the District's decision to disallow Plaintiff from affixing a foot-tall crucifix on the middle-school classroom wall. The complaint's third claim is for violation of Connecticut's Act Concerning Religious Freedom, Conn. Gen. Stat. § 52-571b, predicated on the same allegations.

Among the relief sought was a mandatory injunction requiring school officials to assign Plaintiff once more "to full-time teaching,

9

without any condition that she cease hanging her crucifix on her classroom wall aside her desk in the same location as it was prior." JA24. When filing the complaint, Ms. Castro did not seek any preliminary relief. Rather, for over a month, she remained out on the paid leave that had started in December.

In a meeting held on March 6, 2025, school officials told Ms. Castro that, while on paid leave, the District required her services to help update the curriculum. JA143 ¶ 19. During the meeting, she was informed that the reassignment would be temporary due to a pending investigation into complaints about her classroom interactions. *Id.* A temporary reassignment during an investigation is common protocol. *Id.* ¶ 20. Her office was located in District headquarters, which students cannot visit, and in which the crucifix hangs. JA144 ¶ 21. Ms. Castro then filed for a preliminary injunction to return to teaching and hang the crucifix in the classroom instead.

On November 3, 2025, the district court denied the motion. SPA2

## STANDARD OF REVIEW

This Court engages a "very limited scope of review" when addressing "such an interlocutory order as a preliminary injunction."

10

*Carroll v. Associated Musicians of Greater N.Y.*, 284 F.2d 91, 92 (2d Cir. 1960). In such a situation, this Court is "concerned only whether the court below abused its discretion." *Gillespie & Co. of N.Y. v. Weyerhaeuser Co.*, 533 F.2d 51, 53 (2d Cir. 1976). This Court will only "find an abuse of discretion if a district court 'based its ruling on an erroneous view of the law' or 'made a clearly erroneous assessment of the evidence.'" *Leadenhall Cap. Partners LLP v. Advantage Cap. Holdings LLC*, 171 F.4th 155, 159 (2d Cir. 2026) (quoting *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 99 (2d Cir. 2024)); *accord Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (cleaned up).

## SUMMARY OF THE ARGUMENT

After receiving complaints from students and a teacher, a public school district required its employee to remove a foot-tall crucifix she had placed on a classroom wall. The District Court correctly found as a factual matter that when Plaintiff affixed her crucifix amidst a poster for a social studies textbook, instructions for operating laptop computers, and a printout entitled "Student Daily Schedule," she was acting pursuant to her official duties as a seventh-grade social studies

11

teacher. SPA2. Consequently, the District was well within its rights to control her in-class speech and Plaintiff's speech had no First Amendment protection.

The District Court's decision was neither groundbreaking nor unique, as courts have long recognized that a school district has a substantial interest in maintaining control of the classroom environment and speech occurring therein. The District's actions are not dictated by *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), because Plaintiff's speech occurred while on duty, in the classroom, before a captive audience of seventh graders. Moreover, if Plaintiff were to prevail on her claim, it would elevate a teacher's opinion above that of their employer, eschewing the ability of school districts to govern what does and does not take place in the classroom environment.

The District attempted to balance Plaintiff's desire to be near her crucifix with the legitimate concerns arising from its display. When Plaintiff refused the myriad accommodations offered by the District and insisted that the crucifix must be displayed on the classroom wall in full

12

sight of students, the District was left with little choice but to evaluate Plaintiff's free exercise rights against those of her students.

The District Court correctly concluded both that the crucifix display was government speech and that the District was afforded breathing space to consider those competing interests. Even if the District Court was incorrect, Plaintiff has not demonstrated that she is likely to prevail on her constitutional claims under either the applicable balancing test or strict scrutiny. Consequently, the District Court's denial of injunctive relief should be affirmed.

## **ARGUMENT**

To obtain a preliminary injunction on governmental action taken in the public interest, the applicant must establish a likelihood of success on the merits, irreparable harm without an injunction, and that the public interest favors injunctive relief. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279 (2d Cir. 2021). "The movant must also show that the balance of equities supports the issuance of an injunction." *Id.* When conducting that analysis, this Court has cautioned that:

> Issuance of a preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) (quoting 11A C. Wright, A. Miller, & M.

13

Kane, Federal Practice and Procedure § 2948, at 129 (2d ed. 1995)). Preliminary injunctive relief "should not be routinely granted." *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Medical Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). When deciding whether to issue a preliminary injunction, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

*Id.* All the more so in the classroom setting, given that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges."

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988).

## I.     THE DISTRICT COURT PROPERLY FOUND THAT PLAINTIFF WAS SPEAKING WITHIN THE SCOPE OF HER JOB DUTIES WHEN SHE DISPLAYED THE CRUCIFIX ON THE CLASSROOM WALL.

Classroom walls are an integral part of the learning environment, and they have a "powerful influence on student performance and behavior." JA195. A school district maintains control of its classroom walls, and teachers decorate the classroom walls as part of their teaching duties. In accordance with these historical truths, the District Court found as a factual matter that Plaintiff was acting within the scope of her official job duties when she placed the expressive crucifix on the classroom's walls, and, therefore, the Court concluded that such

14

conduct was not protected by the First Amendment. The District Court's conclusion was based on clear factual findings and comported with precedent. Accordingly, this Court should affirm on this basis and dismiss the appeal.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech." U.S. Const. amend. I. While the Establishment Clause applies to governmental agencies, the free speech and exercise provisions attach to students and governmental employees—"neither of whom shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022) (citation and quotation marks omitted). It is well established, however, that those rights are "not without limits." *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1289 (11th Cir. 2025). Indeed, such rights are not "so boundless that [teachers] may deliver any message to anyone anytime they wish." *Kennedy*, 597 U.S. at 527. This is because, "[i]n addition to being private citizens, teachers and coaches are also government employees paid in part to speak on the government's behalf and convey its intended

15

messages." *Id.* Therefore, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006).

Because Plaintiff is a public-school teacher, the District Court appropriately found that her free speech and free exercise claims should be analyzed by the *Pickering-Garcetti* framework. SPA16, 34.; *see Pickering v. Board of Ed. of Township High Sch. Dist.*, 391 U.S. 563 (1968); *Garcetti*, 547 U.S. at 418. Under that *Pickering-Garcetti* framework, courts initially consider whether an employee is speaking pursuant to her official duties or as a citizen on a matter of public concern. "Speech that owes its existence to a public employee's professional responsibilities" is made "pursuant to [her] official duties," *Garcetti*, 547 U.S. at 421, and is therefore "ineligible for First Amendment protection," *Kennedy*, 597 U.S. at 528-29. The District Court analyzed Plaintiff's free speech claim first and found that Plaintiff was not likely to succeed on that claim because she was speaking pursuant to her official job duties. SPA27 Because Plaintiff's free exercise claim and free speech claim both rested solely on the same

16

expressive conduct—displaying the crucifix on the classroom wall while teaching—and "demand[ed] the same relief," the District Court applied that same conclusion to the free exercise claim. This finding that Plaintiff's claims were barred by *Garcetti* was correct and it eliminates the need for analysis of any of other claims raised by Plaintiff in this appeal. Therefore, the District Court's ruling should be affirmed, and this appeal should be dismissed with no further analysis.

### A. The District Court correctly found that decorating the classroom walls with expressive items is job-related speech.

The first inquiry in the *Pickering/Garcetti* framework is whether the speech at issue "owes its existence to a public employee's professional responsibilities" is made "pursuant to [her] official duties," *Garcetti*, 547 U.S. at 421; accord *Kennedy*, 597 U.S. at 528-29. Two questions guide this determination: "First, courts may consider whether the employee's speech falls outside of h[er] official responsibilities; second, they may ask whether a civilian analogue to the employee's speech exists." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022) (quotation marks omitted).

17

Public employees speak pursuant to their official duties when their "actual, functional job responsibilities" encompass the speech at issue. *Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015). Whether a public employee speaks pursuant to her official duties "is not susceptible to a bright-line rule," and therefore "[c]ourts must examine the nature of the plaintiffs' job responsibilities, the nature of the speech, and the relationship between the two." *Id.* at 173 (quoting *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012)). The inquiry must be conducted "practical[ly], rather than with a blinkered focus on the terms of some formal and capacious written job description." *Kennedy*, 597 U.S. at 529. The "critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

More specifically, for a secondary school teacher, the critical question is whether the expression at issue "was a means to fulfill, and undertaken in the course of performing, h[er] primary employment responsibility of teaching." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (citations omitted). When a teacher instructs students, for example, she does "something she was hired (and paid) to do, something

18

she could not have done but for the [school's] decision to hire her as a public-school teacher." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010); *see also Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir. 2007) (noting that when teachers teach, "the school system does not 'regulate teachers' speech as much as it hires that speech"). In this case, the District Court correctly concluded as a factual matter that Plaintiff was speaking within the scope of her duties and, therefore, that Plaintiff was unlikely to succeed on her free speech claim. The District Court's conclusion should be affirmed.

### i. Creating the Physical Classroom Environment Is a Core Duty of a Teacher at DiLoreto.

As a middle-school teacher, Plaintiff is responsible for maintaining the classroom environment and the District Court correctly found that "one of [Plaintiff's] core duties as a teacher" was "creating a physical classroom conducive to learning," and that "[d]ecorating the walls of the classroom is part of the 'actual, functional job responsibilities' of a teacher at DiLoreto." SPA20 (quoting *Matthews*, 779 F.3d at 184). As a factual matter, the District Court further found that, "[p]ursuant to her duty to create a physical classroom conducive to learning, Plaintiff hung

19

various items on the classroom wall including inspirational quotes, student artwork, a social studies poster, a daily schedule, and reminders about computer commands." SPA21. Therefore, "as a general matter, Plaintiff acted pursuant to her job duties as a teacher when she decorated the walls of her classroom with items the students would see during instructional time." *Id.*

The District Court's findings were based on the District's policy, which recognizes that the "classroom environment has a powerful influence on student performance and behavior." JA195. The policy directs that the "physical aspects of a classroom … should be carefully considered with both individual students' needs and instructional goals in mind." *Id.* The policy provides a "checklist" as a "tool to ensure that the physical arrangement of the classroom is student-centered and task-focused," asking teachers to ensure that the classroom "[a]ddresses academic and social needs of our students," "[r]eflects the diverse cultural and linguistic characteristics of our students," "[e]nsures clean, and attractive settings that stimulate learning and help build a classroom community," and "[e]stablishes emotionally, socially, and physically safe environments for learning." *Id.* These requirements

20

plainly encompass wall displays, and they impose obligations that the teacher fulfills in her professional capacity—not as a private citizen. Contrary to Plaintiff's suggestion to this Court that the policy merely invites teachers to "carefully consider" the physical aspects of the classroom, App. Br. at 24, the policy directs teachers to ensure specific outcomes through a detailed checklist.

Plaintiff herself acknowledged the connection between her classroom decoration and her teaching function. She stated that she displayed "personal expressive items" in the classroom because they "make the classroom environment more conducive to learning" and because such items "humaniz[e] teachers to their students." JA58 ¶¶ 16, 18; SPA21. The very rationale Plaintiff offers for why she hung the crucifix—to improve the learning environment and build rapport with students—is precisely the duty the District Court identified as her "core" job responsibility. SPA20. Whatever Plaintiff's private religious motivation, her own stated justification for the manner and location of the display tracks the official duty the school district assigned her. Put another way, her personal motivation does not alter the functional character of the act. *See Lane*, 573 U.S. at 240 (the "critical question" is

21

whether the speech is "itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties").

Plaintiff's crucifix display cannot be disentangled from the broader classroom environment that the school district employed her to maintain. She hung the crucifix on the same wall, at the same time, and using the same medium—the classroom wall—as the Student Daily Schedule, computer shortcuts, and instructional posters. SPA26. The District Court further found as a factual matter that the crucifix was in the "direct line of sight" of "[m]ultiple student desks." SPA6. No reasonable observer could parse the wall into separate "personal" and "official" zones, and Plaintiff has never identified any principle by which such a line would be drawn.

The District Court's factual findings fully support its conclusion that, "as a general matter, Plaintiff acted pursuant to her job duties as a teacher when she decorated the walls of her classroom with items the students would see during instructional time." SPA21.

### ii. Courts consistently find that speaking to students in a classroom is a core duty of a teacher's job responsibilities.

The District Court's ruling is consistent with a long line of precedent finding that, by hiring a teacher to teach its students, the

22

school district "hire[d] that speech," *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir. 2007). In such circumstances, the school district "has ultimate responsibility for what goes on in the classroom, legitimately giving it a say over what teachers may (or may not) teach in the classroom." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010). Put another way, it is "beyond the possibility for fair-minded dispute that" a teacher's "job responsibilities' did not include speaking to [her] class." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 965 (9th Cir. 2011). Thus, "[w]hen a public-school teacher addresses her students within the four walls of a classroom," that teacher "is unquestionably acting 'pursuant to [her] official duties." *Wood*, 142 F.4th at 1290. *Kennedy*, which addressed off-duty speech outside of a classroom environment, did not undermine this principle, which has, instead, been reaffirmed in its wake.

In *Wood*, for example, the Eleventh Circuit upheld the Florida Department of Education's ability to control a teacher's speech in the classroom through a recently-passed law that governed plaintiff's speech when she "(1) is interacting with students (2) in the classroom

23

and (3) within the scope of her employment duties." *Wood*, 142 F.4th at 1290. While the plaintiff claimed the new law restricting her use of preferred pronouns violated her First Amendment right to free speech, the Eleventh Circuit held that she was unlikely to succeed on her claim because the speech at issue was pursuant to her official duties. Taking the "practical" approach to job duties that the Supreme Court called for in *Garcetti*, the Eleventh Circuit found that it was a "straightforward case" and that the teacher unquestionably was acting within the scope of her duties when addressing students in the classroom. *Id.* at 1290-91. The Eleventh Circuit emphasized that it was not breaking new ground, as its holding was consistent with prior cases both in and outside that circuit. *See, e.g.*, *Brown v. Chicago Board of Education*, 824 F.3d 713, 715 (7th Cir. 2016) ("in-classroom instruction necessarily constitutes statements pursuant to the teacher's official duties" and, therefore, that "a teacher's in-classroom speech is not the speech of a 'citizen' for First Amendment purposes."); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010) ("if it is the school board that hires [a teacher's] speech," then the board "can surely

24

regulate the content of what is or is not expressed, what is expressed in other words on its behalf.").

The Fifth Circuit also relied on the Ninth Circuit's opinion in *Johnson v. Poway Unified School District*, 658 F.3d 954 (9th Cir. 2011), which addressed a teacher's ability to place religious messaging on classroom walls. In that case the teacher had "two large banners" on his classroom walls: One stated "IN GOD WE TRUST"; "ONE NATION UNDER GOD"; "GOD BLESS AMERICA"; and, "GOD SHED HIS GRACE ON THEE."; the other stated: "All men are created equal, they are endowed by their CREATOR." *Id.* at 958. Applying the *Pickering* balancing test, the Ninth Circuit "conclude[d] that there is no legitimate question as to whether the school violated [the teacher's] rights—it did not." *Id.* at 964. This is because the teacher "did not act as a citizen when he went to school and taught class, took attendance, supervised students, or regulated their comings-and-goings; he acted as a teacher— a government employee. . . . Similarly, [he] did not act as an ordinary citizen when 'espousing God as opposed to no God' in his classroom." *Id.* at 967. Therefore, the teacher's rights were not violated by removal of the banners. *See also Downs v. Los Angeles Unified School District*, 228

F.3d 1003 (9th Cir. 2000)(holding that a high school teacher's bulletin board criticizing homosexuality "contained only 'government speech' " where school policy gave administrators authority over the contents of bulletin boards).[1]

This line of cases demonstrates that public schools can control what teachers display on the classroom walls, and Plaintiff has not identified a single case holding otherwise. This is for good reason. As the District Court noted, "[a]ccepting Plaintiff's argument that teachers have a First Amendment free speech right to post 'personal expressive items' related to matters of public concern on classroom walls – where they are visible to students during instructional time – would mean the District could not control the messages conveyed to students while the students are required to be present in the classroom for learning." SPA27. Such an approach would elevate a single teacher's expressive

---

[1] Plaintiff attempts to distinguish her situation from prior caselaw by contending that the District Court improperly concluded that her crucifix was a permanent display, as she allegedly moved it from her prior classroom to her current classroom. (Brief pg. 26). It is undisputed, however, that Plaintiff insisted that the crucifix had to remain on the wall at all times—thus rendering it permanent for purposes of this legal analysis.

preferences over the judgment of her Assistant Principal, Principal, Chief of Staff, and Superintendent, such that any employee could then claim personal ownership over a classroom display and exempt it from workplace control. No principle of law supports that outcome.

### iii. The District Court appropriately interpreted Plaintiff's job duties.

Plaintiff argues that the District Court interpreted Plaintiff's job duties too broadly and effectively treated everything occurring during the school day or on school property to be governmental speech, in violation of cases such as *Kennedy*, 597 U.S. at 529-531, *Shurtleff v. City of Boston*, 596 U.S. 243, 248 (2022), and *Tucker v. State of Cal. Dept. of Educ.*, 97 F.3d 1204 (9th Cir. 1994). *See* App. Br. at 57-58. Plaintiff is wrong on both counts.

First, the school district did not argue to the District Court that *everything* on school property is government speech. The argument was narrower: wall displays visible to a captive student audience during instructional time fall specifically within the scope of a teacher's duty to maintain the learning environment. *Kennedy* warned against an excessively broad approach to ensure that government employees retain the right to attend to personal matters during periods of liberty.

27

*Kennedy*, 597 U.S. at 530. Plaintiff's crucifix was not displayed during a break or in a setting where she was free to attend to personal matters. It occupied a fixed position on the classroom wall throughout all instructional periods, communicating a message to students every class session. That is the opposite of the narrow, personal, off-duty conduct *Kennedy* protected.

The distinction is between the medium and the moment. A teacher who wears a crucifix necklace or bows her head over a meal in the cafeteria exercises personal religious liberty in a way that travels with her person and occurs during periods of personal freedom. *See Kennedy*, 597 U.S. at 531 (citing the examples of "a Muslim teacher … wearing a headscarf in the classroom" and "a Christian aide [who] pray[s] quietly over her lunch in the cafeteria"). But a teacher who affixes a religious symbol to a government-owned wall—where it remains as a fixed feature of the educational environment visible to students throughout every instructional period—is using a uniquely governmental medium of expression that the District employs her to maintain. A school may therefore order a teacher to remove such a permanent display. *Johnson*, 658 F.3d at 964.

28

Moreover, *Kennedy*, *Shurtleff,* and *Tucker* are readily distinguishable, and Plaintiff's reliance on them was appropriately rejected by the District Court. *See, e.g.*, SPA20, 25. As noted already, in *Kennedy,* the Supreme Court highlighted that when the coach prayed, he was not "instructing players … or engaged in any other speech the District paid him to produce as a coach." *Kennedy*, 597 U.S. at 529-530. Indeed, the prayers took place when "coaches were free to attend … to personal matters" and students were "otherwise occupied." *Id.* at 530; *id.* at 2434 (Alito, J. concurring) ("[W]hen he engaged in this expression, he acted in a purely private capacity" because it occurred when he had "a few free moments to engage in private activities")

Unlike the coach in *Kennedy*, whose speech took place after his official duties had ended, Plaintiff's speech – displaying the crucifix on the classroom wall – took place when she was teaching students, discharging the very obligation the school district had hired her to perform. Her middle school students were not "otherwise occupied" like the high school athletes in *Kennedy*. They were a captive audience, required by law to be present in the classroom receiving instruction from Plaintiff. *See* Conn. Gen. Stat. § 10-184. Neither she nor her

29

students were remotely at liberty to attend to do whatever they wanted. The contrast with *Kennedy* could not be sharper.[2] Plaintiff's attempt to shoehorn her case into the language and holding of *Kennedy* was appropriately rejected by the District Court and should likewise be rejected by this Court.

Plaintiff next cites to *Shurtleff* for the proposition that "conduct that is not attributable to the government just because it is hosted on government property," and encourages this Court to use the balancing test set forth in Shurtleff to find that placement of the crucifix on the classroom wall was not governmental speech. App. Br. at 25 (quoting *Shurtleff*, 596 U.S. at 265). But the issue in that case was whether a city had created a public forum for the expression of private speakers' views by allowing flags to fly on a pole outside city hall. *Shurtleff*, 596 U.S. at 248, 252. No such issue exists here, as Plaintiff conceded to the District Court that she was not arguing that the classroom was a public

---

[2] As the District Court noted, in Kennedy counsel for the coach acknowledged that a teacher offering a prayer in the classroom "during instructional time" would be speaking pursuant to his or her official duties. SPA22 n.15.

30

or limited public forum. SPA16, at n.12. This Court should therefore reject Plaintiff's attempt to expand *Shurtleff* into public employee speech jurisprudenc*e.*

In another attempt to avoid the preclusive effect *Garcetti* has on her case, Plaintiff argues that the public is unlikely to regard the crucifix as representing the school district's position regarding Christianity, citing *Tucker v. State of Cal. Dept. of Educ.*, 97 F.3d 1204 (9th Cir. 1994). If anything, *Tucker* supports Defendants' position. In that case, the plaintiff was a computer analyst in the Child Nutrition and Food Distribution Division who had no contact with members of the public in his office. *Id.* at 1208, 1212. When discussing the isolated nature of the plaintiff's position, the Ninth Circuit compared him to teachers, noting that the challenged policy expressly did not apply to teachers—the "persons in the department whose performance of their official duties has the most potential for creating public misperception of the state's role." *Id.* at 1213. The Ninth Circuit went further, noting that "[a] teacher appears to speak for the state when he or she teaches; therefore, the department may permissibly restrict such religious

31

advocacy." *Id*. It also recognized the unique issues raised by a crucifix in public buildings, stating:

> We should note that there is a legitimate state interest in preventing displays of religious objects that might suggest state endorsement of religion. The state has a legitimate interest, for example, in preventing the posting of Crosses or Stars of David in the main hallways, by the elevators, or in the lobbies, and in other locations throughout its buildings. Such a symbol could give the impression of impermissible government support for religion.

*Id*. at 1216. The same concerns present in *Tucker* are present in this case.

In sum, the District Court's denial of Plaintiff's request for injunctive relief was well grounded in the factual record and based on correct understanding of relevant precedent. The District Court's decision should be affirmed under the limited scope of review employed by this Court, and the appeal should be dismissed without any further analysis of the remaining issues raised by Plaintiff.

## II. THE DISTRICT COURT PROPERLY DETERMINED THAT PLAINTIFF WAS NOT REASONABLY LIKELY TO SUCCEED ON HER FREE EXERCISE CLAIM ON OTHER GROUNDS.

Although the District Court could have stopped its analysis of Plaintiff's free exercise claim after concluding that it was unlikely to succeed at step one of the *Pickering/Garcetti* framework, like on

32

Plaintiff's free speech claim, it provided additional analysis of the free exercise claim and found that, under *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 160 (2d Cir. 2001), the free exercise claim was subject to step two of the *Pickering/Garcetti* framework, and that under step two of that framework, Defendants' decisions were entitled to breathing space under binding precent from this Court. The District Court's conclusions were correct and, to the extent they are reached by this Court, they should be affirmed.

### A. Pickering/Garcetti step 2 properly applies to hybrid claims like Plaintiff's.

Based on the evidence in the record, the District Court found as a factual matter that "Plaintiff's practice of hanging the crucifix on the classroom wall necessarily communicates a message to the students in the classroom who are also viewing the crucifix." SPA34. Because "the religious exercise [Plaintiff] says has been infringed is necessarily communicative as it requires the display of the crucifix," the District Court correctly determined that Plaintiff was bringing a hybrid claim, which compelled application of step two of the Pickering/Garcetti test under *Knight.* SPA33.

33

Under *Knight*, which remains binding in this Circuit, application of *Pickering* to a hybrid free-speech free-exercise claim is appropriate because "the employer's interest remains the same and is entitled to the same weight in the constitutional balance." *Knight*, 275 F.3d at 167. Contrary to the argument in Plaintiff's brief to this Court, the reasoning and holding of *Knight* has not been limited to that case. Instead, similar conclusions have been reached in subsequent cases. *See, e.g.*, *Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185, 195 (2d Cir. 2003)("Our analysis is unaffected by the presence of rights to both association and speech."); *Leebaert v. Harrington*, 332 F.3d 134, 144 (2d Cir. 2003) (" '[A]t least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard' to evaluate hybrid claims." (quoting *Kissinger v. Bd. of Trs. of the Ohio State Univ., Coll. of Veterinary Med.*, 5 F.3d 177 (6th Cir. 1993))). The District Court also cited similar conclusions from four other circuits. SPA36-37 (collecting cases). Nothing in *Kennedy* changes this conclusion, or demonstrates that the District Court erred when it applied step two of *Pickering/Garcetti* to Plaintiff's free exercise claim.

## B. The District Court appropriately gave Defendants breathing space in addressing the crucifix.

This Court has repeatedly rejected the idea that school officials are powerless to "steer[] clear of conduct" that might offend the Establishment Clause, "unless the excluded practice would in fact constitute a violation." *Bronx Household of Faith v. Board of Education*, 750 F.3d 184, 197 (2d Cir. 2014). Rather, where, as here, a school district "makes a reasonable, good faith judgment that it runs a substantial risk of incurring a violation of the Establishment Clause" by permitting a religious practice on school grounds, the district may "decline to do so" without threat of an injunction. Id. at 198.

In this context, a school district "must be accorded some leeway" and "breathing space to regulate," even if "the conduct it forbids might not inevitably be determined to violate the Establishment Clause." *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 476 (2d Cir. 1999); *accord Bronx Household*, 650 F.3d at 43 (applying this rule to religious-speech claim). This principle accords with the Supreme Court's decision in *Connick*, where it stated that an employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking

35

action." *Connick v. Myers*, 461 U.S. 138, 152 (1983). This principle has been repeatedly cited and applied by this Court and the district courts in this Circuit. *See, e.g., Silver v. Cheektowaga Cent. Sch. Dist.*, 670 F. App'x 21, 22 (2d Cir. 2016) (applying leeway to affirm dismissal of claim that "the Cheektowaga Central School District had violated [the plaintiff's] First Amendment right to free speech by imposing the restrictions outlined in the School District's 'counseling letter,' which included a direction to remove various religiously-themed postings in Silver's classroom."); *Skoros v. City of New York*, 437 F.3d 1, 27 (2d Cir. 2006) (applying leeway from *Marchi* to claim addressing exclusion of nativity scene from holiday displays in public schools); *Downing v. W. Haven Bd. of Educ.*, 162 F. Supp. 2d 19, 28 (D. Conn. 2001) (applying leeway from *Marchi* to free speech and exercise claims).

Breathing space is appropriate when there is "tension between two constitutional principles—separation of church and state and the free exercise of religion—in the context of public education." *Id.* at 472. In *Marchi,* a school district ordered a teacher to refrain from using religious references in the delivery of his instructional program. When evaluating the teacher's challenge to that order, this Court noted that

"the special nature of public educational institutions gives rise to 'the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)). Further, "the interest of the State in avoiding an Establishment Clause violation may be a compelling one justifying an abridgement of free speech otherwise protected by the First Amendment." *Id.* (quoting *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993)). Indeed, "school districts may direct teachers to refrain from expression of religious viewpoints in the classroom and like settings [and,] indeed, schools have a constitutional duty to make certain that subsidized teachers do not inculcate religion." *Id.* at 475 (cleaned up). Against these principles, this Court stated that:

> [W]hen government endeavors to police itself and its employees in an effort to avoid transgressing Establishment Clause limits, it must be accorded some leeway, even though the conduct it forbids might not inevitably be determined to violate the Establishment Clause and the limitations it imposes might restrict an individual's conduct that might well be protected by the Free Exercise Clause if the individual were not acting as an agent of government. Cf. Waters v. Churchill, 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) (Government has

37

> "freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large[.]"); id. at 671–75, 114 S.Ct. 1878.

*Id*. at 476. Such "leeway" is appropriate because decisions about Establishment Clause issues are "difficult," and school officials "cannot be expected to resolve so precisely the inevitable tensions been the Establishment Clause and the Free Exercise Clause . . . ." *Id* at 476. Based on this principle, this Court affirmed summary judgment for the school district. *Id.*

Likewise, there was tension between the Establishment Clause and the Free Exercise Clause in *Bronx Household of Faith*, 750 F.3d at 196, when a church was allowed to use school property for a host of activities but not religious worship services. The church sued and received injunctive relief at the district court. This Court reversed, however, noting that the school was in a difficult position: if it refused to permit the worship services and then lost litigation over that matter, it would have committed years of violations of the Free Exercise rights of rejected applications. On the other hand, if it granted permission for worship services and then lost litigation over that matter, the Board would have then committed years of violations under the Establishment

38

Clause. This Court held that forcing the Board to make such a decision would be "exceedingly unfair," and "the better rule allows the Board, if it makes a reasonable, good faith judgment that it runs a substantial risk of incurring a violation of the Establishment Clause by hosting and subsidizing the conduct of religious worship services, to decline to do so." *Id.* at 198. Therefore, this Court reversed the district court's entry of judgment for the church and remanded for further proceedings. Here, the District Court appropriately employed Circuit precedent when analyzing Plaintiff's free exercise claim.

Plaintiff argues that the District Court erred because the leeway doctrine "is irreconcilable with *Kennedy* and no longer good law." App. Br. at 42. Based on this belief, Plaintiff argues that the panel in this case should revisit the *Marchi* line of precedent and find that it cannot survive *Kennedy*. This argument is wrong and should be rejected by the panel in this case.

It is well-settled that, "one panel of this Court cannot overrule a prior decision of another panel." *Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 210 (2d Cir. 2003). Put another way, a panel remains bound "by a prior decision of this

39

Court until it is overruled either by this Court sitting *en banc* or by the Supreme Court, or until an intervening Supreme Court decision casts doubt on the prior ruling such that the Supreme Court's conclusion in a particular case broke the link on which we premised our prior decision or undermined an assumption of that decision." *Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 55–56 (2d Cir. 2024) (rejecting district court's erroneous conclusion that Supreme Court decision has casted doubt on prior Second Circuit precedent); *see also Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 334 (2d Cir. 2025) (for a panel to depart "there must be a conflict, incompatibility, or inconsistency between this Circuit's precedent and the intervening Supreme Court decision.").

Here, breathing space remains good law, as *Kennedy* has not broken the link on which this Circuit premised its prior decisions. First, Plaintiff's argument is based on the false premise that "*Marchi's* holding is inextricably intertwined with *Lemon* . . . ." (App. Br. at 43). A review of *Marchi* demonstrates that this Court based its decision to "accord[] some leeway" to school districts facing such circumstances on a wide range of Supreme Court cases, including *Tinker*, 393 U.S. at 507,

40

*Lamb's Chapel*, 508 U.S. at 394, *Widmar*, 454 U.S. at 271; *Lee*, 505 U.S. at 577, and *Waters*, 511 U.S. at 671. These cases remain good law despite the Supreme Court's abandonment of *Lemon*. *See, e.g.*, *Kennedy*, 597 U.S. at 534-37 (citing approvingly to *Lee*, *Lamb's Chapel*, and *Widmar*); *see also Stinson v. Fayetteville Sch. Dist. No. 1*, 798 F. Supp. 3d 931, 943 (W.D. Ark. 2025) ("*Kennedy* cited two public-school Establishment Clause cases, *Lee v. Weisman* and *Santa Fe Independent School District v. Doe*—both of which applied the Lemon test—and treated them as still-binding precedent. . . . It follows that if *Lee* and *Santa Fe* are still good law per the Supreme Court, then so are the other public-school Establishment Clause cases that struck down 'problematically coercive' state laws—like *Stone*.")[3] Thus, the legal basis for *Marchi* extends beyond just *Lemon*.

Plaintiff also contends that *Marchi* "wrongly deferred to the government's asserted interest in avoiding a *possible* establishment violation at the expense of *actual* individual free exercise rights," a

---

[3] *See Jusino v. Fed'n of Cath. Teachers, Inc.*, 54 F.4th 95, 102 (2d Cir. 2022) (prior Supreme Court decision exempting church-operated schools from aspects of federal labor law "remain[ed] good law [after *Kenneddy*] notwithstanding its reliance on *Lemon*.").

rationale that *Kennedy* rejected. App. Br. at 43 (emphasis in original).

The Supreme Court in *Kennedy* consistently noted that the coach was

outside, the game was over, he was off-duty, and the students on the

team were not a captive audience. *Kennedy*, 597 U.S. at 520; *id.* at 525

("both the substance of Mr. Kennedy's speech and the circumstances

surrounding it point to the conclusion" that he was not acting within

the scope of his duties as a coach); *id.* at 543 (Alito, J. concurring)

("[W]hen he engaged in this expression, he acted in a purely private

capacity" because it occurred when he had "a few free moments to

engage in private activities"). Nothing in *Kennedy* impacts either prior

Supreme Court precedent addressing Establishment Clause issues

inside the classroom while teachers are on-duty, nor any precedent from

this Court addressing the unique issues raised in such situations.[4]

Captive audience situations continue to be guided by cases that

remain undisturbed by the *Kennedy* decision, such as *Stone v. Graham*,

---

[4] *See* footnote 2; *see also* Guidance on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools, United States Department of Education, February 5, 2026, available at: (explaining that "[t]he critical factor [in *Kennedy*]. . . was 'whether [the coach] offered his prayers while acting within the scope of his duties," which the Supreme Court found he "did not").

449 U.S. 39 (1980) and *Lee*, 505 U.S. at 577. Plaintiff suggests that *Stone* is no longer good law in the wake of *Kennedy*. App. Br. at 42. Just recently, however, this Court once again cautioned that courts should continue to "'follow [a] case which directly controls, leaving to the Supreme Court the prerogative of overruling its own decisions.'" *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127, 140 (2d Cir. 2025) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)). That principle must be applied here because the *Kennedy* decision failed to cite much less overrule *Stone. See Jusino*, 54 F.4th at 102 ("unless and until the Supreme Court sees fit to overrule *Catholic Bishop* directly, it remains binding on this Court."); *see also Stinson v. Fayetteville Sch. Dist. No. 1*, ___ F. Supp. 4th ____ (W.D. Ark. 2026) ("As much as the State wishes *Stone* were a dead letter, it is not . . . ."). Because *Stone* and its progeny control, Defendants were presented with an actual or a substantial risk of an Establishment Clause violation.

Defendants' actions followed complaints from students and staff regarding the crucifix. SPA7; JA162, ¶¶ 9, 11. Given the cases cited previously, including *Stone* and *Lee*, Defendants had a substantial

concern that Plaintiff's conduct implicated if not directly infringed upon the Establishment Clause. Plaintiff attempts to minimize that concern by arguing that Defendants relied on the *Lemon* test that *Kennedy* formally discarded. *See* App. Br. at 40-42. As the District Court noted, though, Defendants never cited *Lemon* nor "exclusively" invoked the endorsement test that *Kennedy* deemed abrogated. Rather, these officials informed Plaintiff that, as a basic constitutional principle, hanging a religious artifact on a classroom wall without a valid pedagogical purpose would impermissibly promote or establish religion. SPA49-50.

The District Court's conclusion that this posed an actual or substantial risk of an Establishment Clause violation, SPA42, also is supported by Plaintiff's own concessions before the District Court. For example, Plaintiff conceded that "[t]he crucifix was not used as part of [her] curricular instruction." SPA17; App. Br. at 16. Rather, Plaintiff asserted that the crucifix "has personal significance" as a bequest from a friend who figured that Plaintiff would be "likely to treasure it." JA59, ¶ 20. At the same time, though, Plaintiff does not contest that the crucifix is "one of the most ubiquitous symbols in Western society,"

44

exuding a message of Christian devotion. SPA15. Indeed, just as the "Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths," *Stone*, 449 U.S. at 41, the "cross is undoubtedly a Christian symbol," *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 66 (2019). Plaintiff's claim rests on the notion that her in-class practice of religion necessitated visibly displaying the crucifix during instructional hours. Storing this item in a drawer, to be taken out during preparatory time or lunch breaks, allegedly would "trample [her] religious rights." App. Br. at 30. But if "looking at the crucifix" during class hours provided this teacher with "peace and strength," JA59, ¶ 20, it stands to reason that the same sectarian artifact would be likely to "induce the schoolchildren" to "meditate" and "perhaps to venerate and obey," *Stone*, 449 U.S. at 41. Moreover, the District Court found that multiple students and staff expressed concern to the Assistant Principal about the crucifix's sectarian religious nature. *See* JA162, ¶ 9; JA163, ¶ 11.

The Establishment Clause is indifferent to whether classroom religious messages "are merely posted on the wall, rather than read aloud." *Stone*, 449 U.S. at 42. Defendants properly took action to relocate the classroom crucifix to comply with the law.

45

The District Court supported its finding that Defendants were acting in good faith by citing numerous cases (beyond those discussed already) holding that schools can order the removal of religious images and messages from public school classroom walls. SPA51, n.26; *see, e.g.*, *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 683 (6th Cir. 1994) (holding that Establishment Clause barred display in public school hallway of portrait of Jesus that was "not integrated into any course of study"); *Helland v. S. Bend Cmty. Sch. Corp.*, 93 F.3d 327, 331 (7th Cir. 1996) ("A school can direct a teacher to 'refrain from expressions of religious viewpoints in the classroom and like settings.'"); *Marchi*, 173 F.3d at 475 (public school officials "may direct teachers to refrain from expression of religious viewpoints in the classroom."). Against this long line of authority, Plaintiff has not cited to a single case that supports her contention that she has a right to place a crucifix on a classroom wall during instructional time, much less one in the direct line of sight for captive students. Instead, she relies on an extrapolation of *Kennedy* to cases it didn't mention and to factual situations it went out of its way to show it was not addressing.

46

Even if there is some question about the leeway doctrine's application in cases involving phantom violations, this was not the case here as substantial caselaw supported Defendants' determination that Plaintiff's placement of the crucifix on the classroom wall constituted an actual or a substantial risk of an actual Establishment Clause violation and consequently should be taken down. Therefore, the District Court properly gave Defendants breathing space when assessing Plaintiff's claims at step two of the *Pickering/Garcetti* framework.

## III.   THIS COURT SHOULD REMAND THE CASE FOR ADDITIONAL PROCEEDINGS IF NECESSARY.

After resolving the case based on the application of the breathing space principle, the District Court stated that it "need not resolve whether Defendants have satisfied step two *Pickering* balancing by showing that the crucifix was disruptive or potentially disruptive, and whether the government's interests in avoiding this disruption outweighs Plaintiff's interest." SPA38, n.21. In her brief, Plaintiff repeatedly faults the District Court for deciding that step two was applicable to her free exercise claim, and for relying on leeway instead of conducting the full balancing at step two. App. Brief  at 21, 34, 55. If this Court agrees that the District Court erred by failing to conduct the

47

step two balancing test, then this Court should remand the case to the District Court with instruction to make factual findings concerning whether the crucifix was disruptive or potentially disruptive, the government's interests in avoiding this disruption, and Ms. Castro's interests in keeping the crucifix on the wall, and then balancing those interests in the manner required on a motion for preliminary injunction. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994)(recognizing the authority of federal appellate courts to seek "supplementation of a record without a formal remand or the need for a new notice of appeal before the appellate panel acts on the supplemental record."); *see also Lego A/S v. Zuru Inc.*, No. 24-634-cv, 2025 WL 915027, at *3 (2d Cir. Mar. 26, 2025) (remanding case so district court could "supplement the record by providing its assessment of whether the Third-Generation figurines are substantially similar to or likely to be confused with Lego's Minifigure" and to "apply the more discerning observer test in its assessment of substantial similarity."); *Lekuntwane v. Help at Home CT, LLC*, No. 24-1662, 2025 WL 2658821, at *4 (2d Cir. Sept. 17, 2025)(remanding so that "the district court may undertake a renewed factual inquiry to determine whether the parties

48

intended to be bound under *Klein* by the MOU as supplemented by any subsequent agreement or the final settlement agreement itself.").

### A. Plaintiff's Speech Was Disruptive.

To the extent the Court determines that the District Court's factual findings are sufficient to conduct step-two disruption analysis, the Court should find that those facts clearly demonstrate that that the crucifix was disruptive or potentially disruptive and that Defendants' interests in avoiding this disruption outweighed Ms. Castro's interest in keeping the crucifix on the wall. Accordingly, this Court should conclude that Plaintiff is not entitled to any preliminary injunctive relief on either her free speech or her free exercise claim.

At step two, a court looks at "whether the employer's reaction to that speech was nonetheless justified, balancing the employee's interest 'in commenting upon matters of public concern' against the public employer's interest in 'promoting the efficiency of the public services it performs through its employees.' *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731; *see Matthews v. City of New York*, 779 F.3d 167, 172-73 (2d Cir. 2015)." *Heim v. Daniel*, 81 F.4th 212, 224 (2d Cir. 2023). To prevail at step two, therefore, defendants must demonstrate that the government employer's interests in maintaining an efficient and effective public

49

workplace outweigh the employee's "interest in making her statement." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). This analysis looks beyond the statement itself to "the manner, time, and place of the employee's expression," as well as to "the context in which the dispute arose." *Id*. This balancing at step two is "more lenient" to the government than strict scrutiny is, *Kennedy*, 597 U.S. at 532, and the balancing takes into account that the role of a "teacher in a public school" entails a "degree of public trust" greater than in most public jobs. *Melzer*, 336 F.3d at 198; *see also Tucker*, 97 F.3d at 1213 (noting that teachers were the "persons in the department whose performance of their official duties has the most potential for creating public misperception of the state's role.").

Here, the factual findings set forth in the District Court's opinion show disruption and the potential for more disruption of the classroom environment, which tips the balance against Plaintiff. To begin, the District Court found that the school district's policy has formally recognized how a classroom's physical aspects have a "powerful influence on student performance." SPA4. The school thus can take "appropriate steps to ensure that its message is neither garbled nor

50

distorted." *Rosenberger v. Rector and Visitors of U. of Virginia*, 515 U.S. 819, 833 (1995). Even if a First Amendment claim is not entirely foreclosed, the school may still control the backdrop against which a middle-school teacher imparts knowledge of world affairs. That interest is significantly greater than the school's interest would be in relocating private citizens' religious artifacts. *See Pickering*, 391 U.S. at 573.

Further, for *Pickering* balancing, "the statement will not be considered in a vacuum." *Rankin*, 483 U.S. at 388. Before the District Court, Defendants established that Plaintiff said aloud in class that students needed Jesus, were sinners, or should not disappoint "Papa God." *E.g.*, JA163, ¶ 11. Although not cited as a ground for her discipline, when the focus was on the crucifix, these types of comments may have appeared more pointed—or more overtly religious—in the presence of a nearly foot-tall crucifix on the classroom wall. These comments only underscore the government's interest in limiting Plaintiff's simultaneous in-class expression through religious iconography. A public-school teacher cannot "conduct just a little proselytizing on the theory that it did not do very much harm to the

51

educational mission." *Mayer*, 474 F.3d at 480 (quotation marks omitted).

Moreover, after being suspended and placed on paid leave, Plaintiff nevertheless accessed the District's text-message application and informed students that "I have been placed on Administrative Leave for refusing to remove a Crucifix from my desk area." JA182. In this mass text, she characterized the "lesson" as being that resisting orders from above was "doing what is right." *Id*. In other words, this teacher boasted to students about *defying the Superintendent*—the official with ultimate authority "for the supervision of the schools under [the District's] control." Conn. Gen. Stat. § 10-157(a). Whatever the leadup, that gratuitous action inherently "interfered with the regular operation of the school[]," *Pickering*, 391 U.S. at 573, and "threaten[ed] to undermine its ability to perform its legitimate functions," *Knight*, 275 F.3d at 163 (quotation marks omitted). Indeed, a student reported the message to a teacher, and a parent told the Assistant Principal it was inappropriate. *See* JA165, ¶ 21.

The District provided the District Court with this evidence of the disruption and the disruptive potential of Plaintiff's activities, and that

is enough. *See Melzer*, 336 F.3d at 197; *Knight*, 275 F.3d at 164. An employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick*, 461 U.S. at 152. Nor must a school district allow a classroom to devolve into strife before taking action to preserve an environment of regularity and neutrality. To the contrary, Defendants were entitled to take action at the time they did.

Moreover, "[w]here a single speaker communicates to many listeners," the speaker's First Amendment interest wanes if a "'captive' audience cannot avoid objectional speech." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 541-42 (1980).Plaintiff taught five sections to more than 100 students, whose school attendance was compulsory. A single speaker subjected this captive audience of dozens at a time to continual religious expression for almost an hour at a time. The school district has a significant interest in the messages being expressed to this captive audience of middle school students. *Stinson v. Fayetteville Sch. Dist. No. 1*, 798 F. Supp. at 948 ("Contrary to the State's contention, the Ten Commandments are not passive because

53

students in public schools are forced to engage with them and cannot look away.")

In contrast, Plaintiff has failed to demonstrate any significant burden on her interest in making her statement. Plaintiff acknowledges that she would only use the crucifix to pray during her "personal time." App. Br. at 24. But the school district never prevented Plaintiff from using the crucifix during her personal time when she was off duty and free to engage in other activities like the coach in *Kennedy*. In fact, the District Court found that the District had offered Plaintiff numerous alternatives to placing the crucifix on the wall during instructional time, including placing it under her desk or only taking it out when she was on her personal time. SPA9. Because the District fully accommodated Plaintiff's ability to view the crucifix during her personal time and only sought to remove it from its permanent placement on the wall during class hours—when she would not be praying either to herself or in front of the class—Plaintiff has not demonstrated how her interest would be significantly burdened. To the contrary, taken off the wall and stored in a drawer during class hours, the crucifix still could

54

have fulfilled her alleged interest in "pray[ing] silently in [her] personal time," including during "lunch breaks." JA59, ¶¶ 20-21.

In the end, the desire to avoid an Establishment Clause violation independently tilts the *Pickering* balance for the District. Where, as here, a public employee has indisputably "promoted religious messages while working with clients on state business, raising a legitimate Establishment Clause concern," this fact "permits the state to place a slight burden" on the employee's speech: she "may not share [her] religious beliefs with clients while conducting state business." *Knight*, 275 F.3d at 166.

### B. Plaintiff failed to show a substantial likelihood of success even if strict scrutiny applied to her free exercise claim.

In her brief, Plaintiff also claims that, instead of applying step two of the *Pickering/Garcetti* framework, the District Court should have analyzed her free exercise claim under strict scrutiny. App. Br. at 18-19. Plaintiff then conducts a strict scrutiny analysis, even though the District Court stopped its analysis at the breathing space doctrine. To the extent this Court believes the District Court erred in its step one analysis and believes that strict scrutiny should be applied, then this

Court should remand the case and give the District Court an opportunity to make factual findings specific to the strict scrutiny test and apply those facts to that test. *See Jacobson*, 15 F.3d at 22; *Lego A/S*, 2025 WL 915027, at \*3.

Even if this Court applied strict scrutiny directly based on the existing factual record, the District's actions easily satisfy that standard of review. In general, "a plaintiff may carry the burden of proving a free exercise violation . . . by showing that a government entity has burdened [her] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kravitz v. Purcell*, 87 F.4th 111, 124 (2d Cir. 2023) (quoting *Kennedy*, 597 U.S. at 525). In that event, "a government entity normally must satisfy at least 'strict scrutiny,' showing that its restrictions on the plaintiff's protected rights serve a compelling interest and are narrowly tailored to that end." *Kennedy*, 597 U.S. at 532. "A similar standard generally obtains under the Free Speech Clause," for evaluating content-based speech restrictions. *Id.* Again, Defendants' interest in avoiding an Establishment Clause violation was demonstrably compelling, and their reaction to the classroom crucifix was narrowly tailored in light of the circumstances.

### i. The school district had a compelling interest in removing the crucifix from the wall.

For close to half a century, the establishment clause has barred permanently displaying undeniably sacred religious items on public "schoolroom walls" unless "integrated into the school curriculum" through "appropriate study of history, civilization, ethics, comparative religion, or the like." *Stone*, 449 U.S. at 41-42.

Here, it is undisputed that the crucifix was not used as part of Plaintiff's curricular instruction. SPA18. Instead, Plaintiff claimed it had "personal significance" because it was a gift from a friend, and she believed she needed to put it on the wall in order to live out her faith. SPA6. The Constitution has long forbidden such activity, "[h]owever desirable this might be as a matter of private devotion." *Stone*, 449 U.S. at 42; *accord Washegesic*, 33 F.3d at 683 (holding that Establishment Clause barred display in public-school hallway of portrait of Jesus that was "not integrated into any course of study"). Again, despite Plaintiff's claims, *Stone* was not overruled, much less discussed, by *Kennedy*. App. Br. at 40, n.6. Because *Stone* remains good law and controls, the school district had a compelling reason for taking the crucifix down from the classroom walls. *See Jusino*, 54 F.4th at 102 ("unless and until the

57

Supreme Court sees fit to overrule *Catholic Bishop* directly, it remains binding on this Court.").

Plaintiff's free exercise claim rests on the notion that her in class practice of religion necessitated visibly displaying the crucifix during instructional hours, and that the alternatives offered by the school district—including it in a drawer until it could be taken out during preparatory time or lunch breaks---would "trample [her] religious rights." App. Br. at 29-30. But if "looking at the crucifix" during class hours provided this teacher with "peace and strength," JA59, ¶ 20, it stands to reason that the same sectarian artifact would be likely to "induce the schoolchildren" to "meditate" and "perhaps to venerate and obey," *Stone*, 449 U.S. at 42.[5] The District undoubtedly had a compelling reason to act.

---

[5] As James Madison—a driving force behind the First Amendment—said of promoting religion through state sponsorship, "'[i]t is proper to take alarm at the first experiment on our liberties.'" Engel v. Vitale, 370 U.S. 421, 436 (1962) (quoting Memorial and Remonstrance Against Religious Assessments (1785), II Writings of Madison 183, at 185-186). As the Supreme Court since has observed, the Establishment Clause's "first and most immediate purpose rested on the belief that a union of government and religion tends to destroy government and to degrade religion." Engel, 370 U.S. at 431.

### ii. This teacher's crucifix openly broadcast a particular religion to a captive seventh-grade audience.

Other aspects of this controversy reinforce the District's compelling interest in insisting that Plaintiff relocate the crucifix from the classroom wall. This is not a case merely about a religious symbol in a generic public place. Rather, the dispute arose over a non-curricular crucifix inside a middle-school classroom. In these environs, courts have "been particularly vigilant in monitoring compliance with the Establishment Clause," specifically because "[s]tudents in such institutions are impressionable and their attendance is involuntary." *Edwards v. Aguillard*, 482 U.S. 578, 583-84 (1987).

In *Lee v. Weisman*, for example, the Supreme Court held that a school-sponsored nondenominational prayer given at a public high-school graduation ceremony violated the Establishment Clause. 505 U.S. 577, 593-98 (1992). The Court held that the prayer "bore the imprint of the State and thus put school-age children who objected in an untenable position." *Id.* at 590. It observed that a request that students respect religious practices in a school context could come off as "an attempt to employ the machinery of the State to enforce a religious orthodoxy." *Id.* at 592. Given the graduation ceremony's importance, the

Court emphasized that students "had no real alternative to avoid" attending—and becoming tacitly complicit in the religious exercise. *Id.* at 598.

These same principles profoundly support the District's actions here. *Lee* reaffirmed that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." 505 U.S. at 587. And this "prominent modern case on that subject . . . did not rely on *Lemon*." *Am. Legion*, 588 U.S. at 70 (Gorsuch, J., concurring). The Supreme Court in *Kennedy* had "[n]o doubt" that coerced attendance at formal religious exercises "was among the foremost hallmarks of religious establishments the framers sought to prohibit," but added that the Court's members "have sometimes disagreed on what exactly qualifies as impermissible coercion in light of the original meaning of the Establishment Clause." 597 U.S. at 537. To illustrate this divergence, the Court pointed to *Lee*'s majority and dissenting opinions. *See id.* Here, Plaintiff's in-class religious practice had at least three features that the dissenting opinion deemed missing from the ceremony in *Lee*, which together serve to highlight the Establishment Clause problem this crucifix posed.

60

First, Plaintiff's religious messaging came inside the classroom, raising "special concerns regarding state interference with the liberty of parents to direct the religious upbringing of their children." *Lee*, 505 U.S. at 643 (Scalia, J. dissenting). "'Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family.'" *Id.* at 643-44 (quoting *Edwards*, 482 U.S. at 584); Plaintiff openly practiced religion through a visible symbol while "teaching young students." Pl. Decl. ¶ 20.

Second, even if the majority and dissenting opinions in *Lee* disagreed about whether students' presence at graduation was compelled; *see Lee*, 505 U.S. at 598 (majority op.); *id.* at 643 (Scalia, J. dissenting); there is no such dispute here because the State of Connecticut views education as "so important that the state has made it compulsory"—in reality—"through a requirement of attendance." *Horton v. Meskill*, 172 Conn. 615, 647 (1977). More specifically, each parent or guardian of a minor child enrolled in a public school "shall cause such child to attend [that] public school regularly" while in

session. Conn. Gen. Stat. § 10-184. As DiLoreto's Handbook stresses, "[s]tudents need to be present in order to learn." JA173. The State "exerts great authority and coercive power" to make that happen. *Edwards*, 482 U.S. at 584. Once present, DiLoreto's seventh graders cannot be excused from learning social studies to avoid the intended message. *See Lee*, 505 U.S. at 594 (making students hear one-time, two-minute prayer violated Establishment Clause); *Engel*, 370 U.S. at 430 (making students hear one-sentence, daily classroom prayer violated Establishment Clause).

Third, Plaintiff's crucifix conveyed a "sectarian religious belief." *Lee*, 505 U.S. at 643 (Scalia, J. dissenting). Absent from *Lee*, that characteristic cuts "against the central meaning of the Religion Clauses of the First Amendment, which is that all creeds must be tolerated and none favored." *Id.* at 590 (majority op.). After all, seventh graders have free exercise rights too. On this subject, "the principle of neutrality has provided a good sense of direction: the government may not favor one religion over another, or religion over irreligion, religious choice being the prerogative of individuals." *McCreary County v. ACLU of Ky.*, 545

62

U.S. 844, 875 (2005).[6] Combined, *Stone* and *Lee* fully supported the

District's interest in relocating this inherently sectarian, in-class image.

*See Washegesic*, 33 F.3d at 683.

### iii. Defendants' response was narrowly tailored to the circumstances.

Narrow tailoring requires showing that no lesser restriction would

achieve the government's genuine, compelling objective. *See Agudath*

*Israel of America v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020). To satisfy

this test, the government must have meaningfully considered

alternatives "imposing lesser burdens on religious activity," without

success. *See id.* (citing *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)).

This element is easily met here.

In discussions with Plaintiff and her union, school officials

proposed several alternative locations for the crucifix that would respect

Plaintiff's right to practice religion but keep the item from students'

view during instructional hours. These options included placing the

---

[6] James Madison famously warned "'that the same authority which can establish Christianity, in exclusion of all other Religions, may establish with the same ease any particular sect of Christians, in exclusion of all other Sects.'" *Engel*, 370 U.S. at 436 (quoting Memorial and Remonstrance Against Religious Assessments (1785), II Writings of Madison 183, at 185-186).

crucifix in or near the desk drawer, which would have permitted Plaintiff to "pray silently in [her] personal time" and "[d]uring [her] lunch breaks." JA59, ¶¶ 20-21. But Plaintiff reneged and resisted, restoring the crucifix to the wall and saying she could not teach without it on the wall. JA61, ¶ 39. Initially out of options, the District suspended her for two days, then placed her on indefinite leave with full pay. Even afterward, the District continued to explore whether Plaintiff would agree to remove or relocate the crucifix. *See* JA64, ¶ 50. Unsuccessful suggestions included placing the crucifix in her pocket (if it could fit there), in a desk drawer (to view it when students were away), under the desk (attached with a magnet), or behind a screen (that would obscure the crucifix from nearby students' view). *See* JA143, ¶ 18. The District thus imposed, and maintained, the discipline "only after contemplating alternative courses of action," which evidences narrow tailoring. *Jeffery v. City of New York*, 113 F.4th 176, 195 (2d Cir. 2024).

Despite Plaintiff's continued claims to the contrary, *Kennedy* fails to change this conclusion. Indeed, in *Kennedy* the coach ceased his practice of praying in the locker room with students once the

64

administration told him to stop. *See Kennedy*, 597 U.S. at 520. The Supreme Court only addressed the coach's quiet, on-field prayers after football games that were optional for students to attend and that occurred "when students were engaged in other activities," and "coaches were free to attend briefly to personal matters." *Id.* at 530. Plaintiff was provided narrowly tailored options that would have allowed her to engage in the same off-duty prayer as the coach in *Kennedy*. Nothing in *Kennedy* suggests otherwise or demonstrates that Plaintiff can hang a crucifix in a classroom, as a message to captive students, during instructional hours. *Marchi,* 173 F.3d at 475 (as a rule "schools may direct teachers to refrain from expression of religious viewpoints in the classroom.")(quotation marks omitted).

Finally, Plaintiff ignores a century's worth of precedent with a quest for historical analogs to her activity, akin to the Second Amendment standard from *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). This argument misses the mark. "Colonial schools certainly started with a religious orientation," but the "democratic response of the American community to the particular needs of a young and growing nation" over time produced a "sharp

65

confinement of the public schools to secular education." *People of State of Ill. ex rel. McCollum v. Bd. of Ed. of Sch. Dist. No. 71, Champaign Cnty., Ill.*, 333 U.S. 203, 215 (1948) (Frankfurter, J., concurring).

A court cannot ignore that evolution. To be sure, *Kennedy* reiterated that the Establishment Clause's meaning has to "accord with history and faithfully reflect the understanding of the Founding Fathers." 597 U.S. at 535-36 (cleaned up). Notably, *Kennedy* traced this language to a concurring opinion in a decision nullifying a daily classroom prayer, *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963). Observing that "American education has greatly changed since the First Amendment was adopted," that opinion called it irrelevant if "devotional exercises in the schools of the young Republic did not provoke criticism." *Id.* at 238-39 (Brennan, J., concurring). That same opinion also described as "futile and misdirected" any "too literal quest for the advice of the Founding Fathers upon the issues of these cases." *Id.*; *accord Edwards*, 482 U.S. at 583 n.7. "Since there then existed few government-run schools, it is unlikely that the persons who drafted the First Amendment, or the state legislators who ratified it, anticipated the problems of interaction of church and state in the public

66

schools." *Wallace v. Jaffree*, 472 U.S. 38, 80 (1985) (O'Connor, J., concurring). Thus, any absence of early case law does not signal "that the practice of prayer in public schools enjoyed uninterrupted government endorsement from the time of enactment of the Bill of Rights to the present era." *Id.* In all, controlling precedent forecloses Plaintiff's federal claims.

### C. The District Court should make initial findings on the remaining elements of Plaintiff's request for injunctive relief.

The District Court resolved the case based on a finding that Plaintiff had not established a likelihood of success on the merits, SPA2, and therefore did not address the remaining elements of Plaintiff's request for preliminary injunctive relief: namely irreparable harm, the public interest in injunctive relief, and the balancing of the equities. *See We The Patriots USA, Inc.*, 17 F.4th at 279. To the extent this Court concludes that Plaintiff has shown a likelihood of success on the merits, the case should be remanded to the District Court for the necessary fact finding and balancing of the equities. *See, e.g.*, *Red Earth LLC v. United States*, 657 F.3d 138, 146 (2d Cir. 2011) (reviewing for abuse of discretion district court's conclusion "that the potential for

67

economic harm to plaintiffs tipped the scales of public interest in favor of enjoining the problematic provision."); *see also Martins v. Pidot*, 663 F. App'x 14, 17 (2d Cir. 2016) (injunctive relief improperly when the court failed to find that the equities tipped in Plaintiff's favor). If this Court elects to address those equitable factors in the first instance rather than remand, the factual record shows that the equities tip in Defendants' favor.

When balancing the equities, this Court has cautioned that "deciding whether to issue a preliminary injunction, courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *See We The Patriots USA, Inc.*, 17 F.4th at 279 (quoting *Winter*, 555 U.S. at 24). This is even more so when the case involves the classroom setting, given that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." *Hazelwood Sch. Dist.*, 484 U.S. at 273.

Plaintiff argues that the loss of her First Amendment freedoms for even a minimal period of time constitutes irreparable harm, citing this Court's decision in *Mid Vt. Christian Sch. v. Saunders*, 151 F.4th 86 (2d

68

Cir. 2025). In that case, however, the challenged action prevented students from participating in all state-sponsored extracurricular activities. Here, Plaintiff continues to be employed by the District without financial harm, and Plaintiff could continue to use the crucifix to pray when she is off duty—just like the coach in *Kennedy*.

An injunction returning the crucifix to the classroom wall in front of a captive student audience during the pendency of litigation is not in the public interest. The more than 100 students moving through Plaintiff's classroom each day have their own First Amendment rights, including the right to be free from governmental coercion of religion in a classroom. In addition, the students' parents have their own rights to control the religious upbringing of their children. *Mahmoud v. Taylor*, 606 U.S. 522, 530 (2025) ("A government burdens the religious exercise of parents when it requires them to submit their children to instruction that poses a 'very real threat of undermining' the religious beliefs and practices that the parents wish to instill.") (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)). Here, the District Court found that students had complained about Plaintiff's religious comments in the classroom, which were were being investigated by the school district. SPA7 n.7.

70

The public interest will not be furthered by returning Plaintiff to the classroom with the crucifix on the wall before the conclusion of the litigation and the full assessment of the case.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), undersigned counsel certifies that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Local R. App. P. 32.1(a)(4) because it contains 13,948 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements in Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Century Schoolbook 14 point font.

By: /s/ Peter J. Murphy
Peter J. Murphy